## FRANK BEARD v. THE STATE.

No. 2045. Decided October 25, 1899.

**1. Special Venire—Clerical Mistake.**

A clerical mistake in the writ of special venire served upon defendant, which showed that one of the veniremen was summoned twice, will not vitiate the panel.

**2. Same.**

Where the sheriff, in making his return upon the writ of special venire, inadvertently inserted the name of N. E. G. twice, when one of the names should have been N. Z. M. instead of N. E. G., and N. Z. M. who had in fact been also summoned, appeared in court and was tendered to defendant, who excepted to him, Held, no ground of complaint is shown.

**3. Same—Amendment of Sheriff's Return.**

Where the sheriff's return upon a writ of special venire is defective or insufficient, it is proper for the court to permit him to amend the same, showing explicitly why certain named jurors had not been summoned.

**4. Same—Sheriff's Return—Diligence.**

A return by the sheriff as to one of the veniremen, to the effect that he had gone to the place where the juror is supposed to have lived, and could not find him, shows all the diligence required.

**5. Same—Error as to Name of Venireman—Harmless When.**

Where error in misnaming has been committed by the clerk in inscribing the names of veniremen in the copy served upon defendant, but the jurors who were actually summoned, or named, were present, and being excepted to by defendant, were stood aside by the court, the error, if any, becomes harmless.

**6. Same—Order for Special Venire.**

Under our statute the court may order any number of persons to 'be summoned upon a special venire, not less than thirty-six. Where defendant asked for a venire of sixty persons, and the court ordered only fifty, one of whom it afterwards appeared was dead, and two others were misnamed, Held, this did not vitiate the venire.

**7. Same—Service of Copy—Presumption.**

The presumption obtains that officers perform their duty until 'the contrary is shown by proper bill of exceptions. The service of a copy of the special venire, although containing clerical errors, is not reversible error.

**8. Same—Sick Juror.**

Where it appeared that one S., who was upon the regular jury for the week, had been excused by the court upon his affidavit that he was sick and unable to attend; and it further appeared that said juror lived eighteen miles from the court; Held, the court did not err in refusing to delay the trial until the said juror S. could be again brought into court.

**9. Murder—Charge Upon Murder in the Second Degree.**

On a trial for murder it is not error for the court to refuse to charge upon murder in the second degree, where the evidence discloses an assassination by defendant of his express malice.

**10. Same—Express Malice—Charge.**

On a trial for murder, where the circumstances attendant upon the killing exclude any other intention than that to take the life of deceased, defendant can not complain that the charge of the court upon express malice failed to define the degree of "serious bodily harm" necessary to constitute express malice.

**11. Same—Charge as to Form of Verdict.**

On a trial for murder, where the court, as to the form of the verdict, instructed the jury that if they found the defendant guilty they would assess his punishment at —— years, etc., and if they found him not guilty they would simply say so in their verdict; Held, not subject to the objection that because there was no alternative form for a verdict of acquittal the jury had no option but to convict.

**12. Murder—Charge—"Cool, Sedate, and Deliberate."**

On a trial for murder, the words "cool, sedate, and deliberate," used to characterize the state of mind essential to express malice, are without technical meaning, should be received in their usual and ordinary acceptation, and need not be defined in the charge of the court.

APPEAL from the District Court of Shelby. Tried below before Hon. TOM C. DAVIS.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

Appellant was charged by the indictment with the murder of Joe Collins on the 15th day of December, 1898, by shooting him with a gun.

Appellant owned a farm in Shelby County, a part of which he rented to deceased, Joe Collins, who lived on said farm in a house about a quarter of a mile from where defendant lived. In the summer of 1889 the parties seemed to have had a falling out about the settlement between them, and appellant heard that Collins had been making threats against him. On the Sunday morning before the killing, the parties met at a road crossing, where a renewal of their troubles about the settlement occurred and a fight ensued, in which Collins got the best of it. Appellant was not satisfied with the way the fight went off, and it seems that he traded for a gun and prepared ammunition for it. In buying the ammunition, defendant wanted to get some shells loaded with buckshot; the merchant not having any shells, finally sold him some duck or turkey shot, which he wrapped up in cream-colored paper bags. This was in the morning of the day before the killing. Mrs. Joe Collins testified as follows for the State: "Deceased, Joe Collins, was my husband; was killed on night of December 15, 1898. He had been making ties for railroad; came home about dark; had a load of wood; made fire; sat down and played with children. I prepared supper. He, my mother, Mrs. Webber, and Mrs. Porterfield, who were with us that night, all went to supper. After we were through eating, Mrs. Webber, Mrs. Porterfield, and myself went into the house from the kitchen to the fire. Deceased stayed in the kitchen with our little boy, who was about 5 years old. Soon after we left the kitchen we heard a noise in it and immediately heard a gun fired. I went to the kitchen, met my husband, who said he was shot, and sank down and died without saying a word. We have been living in this neighborhood four years; came from Georgia. My husband has had

no trouble with anyone, except defendant, since he has lived here. Our house consisted of front room, front gallery, shed room, and kitchen. Gallery four feet wide between shed room and kitchen. Kitchen fronts endwise to shed room. The doors to front room, shed room, and end door in kitchen are all on line with each other. The kitchen is sixteen feet long by twelve or fifteen wide. Stove to right as you enter in corner furthest from entrance door. Table five or six feet long in center of kitchen. Kitchen is of logs; other houses plank. In south side of kitchen, five or six feet from the ground, is a large crack between the logs. Deceased sat facing this crack, or on right of table as you enter the kitchen."

Parties who went to the place of the killing found cream-colored paper in the kitchen of the dead man, scattered from a large crack in the kitchen across the house towards the stove. This paper had evidently been used for gun-wadding, and pieces of it which had been picked up were shown to the merchant who sold the ammunition to defendant, and he recognized it as the same character of paper which he had used in wrapping the ammunition for appellant the day before. The justice of the peace who held the inquest cut some of the shot out of deceased's body, and they corresponded in size and appearance with that sold by the merchant to appellant on the day before. Appellant's gun was also procured and examined by the constable and others, and it was found by them that one barrel had been recently discharged. The defense was an alibi, and the defendant himself testified that he did not leave the house at all that night, and had nothing to do with the killing of the deceased.

*James T. Polley* and *Mantooth & Townsend,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

We will take up appellant's exceptions to the special venire in the order in which they appear in appellant's first bill of exceptions. The first objection to the special venire is "that the special venire, as served upon appellant, shows the name of N. E. Grubbs as having been summoned twice." A mere clerical mistake, such as that indicated in appellant's exception, will not vitiate the panel.

Appellant's next exception is "that said copy of said venire served upon him showed that only four persons were not served with said special venire, to wit, W. B. Bradberry, A. J. Pounds, T. Faulk, and E. D. Bogard, and that in only one instance, to wit, that of T. Faulk, does the said sheriff show the reason why the said four persons were not summoned, when in truth and in fact the said sheriff does not show the diligence that he used to summon the said three persons, and does not show the cause of the failure to summon the said three

persons named as not having been summoned." The court, in his explanation to the bill in reference to diligence, makes this statement: "That he permitted the sheriff to amend his return, and, as amended, the return showed that Faulk was dead, and that there were no such persons in the county as A. J. Pounds and W. B. Bradberry; and that he did not summon Bogard for want of time; that he went to the neighborhood where he was informed he lived, but did not find him, and did not have time to find him. As to the name of N. E. Grubbs appearing to have been served twice, the mistake occurred by the sheriff in making his return in writing the name 'N. E. Grubbs' instead of 'N. Z. Mills.' Mills had, in fact, been served, and was present in court, and tendered defendant, who excepted to him." We think this explanation disposes of the exception urged by appellant. As to the juror Bogard, the sheriff has shown all the diligence in his return that could be required, having gone to the place where the juror is supposed to have lived, and not finding him. There is no injury made to appear by the bill to the rights of appellant on account of the absence of the juror Bogard. Defendant furthermore excepts to the sheriff's return because the same "shows no reason why he failed to summon R. S. Dubose, whose name appears on said special venire; nor does he show the diligence he used in trying to summon him. The sheriff summoned on the said special venire R. E. Dubose and C. A. Bryant, and said names are copied in the list of jurymen served on defendant as summoned, when no such jurymen or persons were drawn on said special venire." The court, in his explanation relative to this matter, says: "That R. S. Dubose was drawn and served, but by some mistake was copied by the clerk 'R. E. Dubose.' The juryman had been summoned by the sheriff, and was in attendance, and was excepted to by defendant when tendered to him, and set aside. The name of C. A. Bryant was drawn on the venire, and summoned by the sheriff, and the clerk by mistake copied the name of C. A. Bradley. Bradley was present in court, and, when tendered defendant, was objected to by him, and set aside." This explanation, we take it, disposes of this exception. In passing upon a similar question, this court used this language: "When the juror is misnamed in the copy of the special venire served on the defendant, it is the proper practice to stand him aside. It was error to refuse to stand the juror aside, but the error becomes harmless in view of the fact that the juror did not sit upon the case, the defendant having rid himself of him by a peremptory challenge, and no objectionable juror having sat upon the case." Hudson v. State, 28 Texas Crim. App., 323. In this case appellant was not forced to exhaust a peremptory challenge, but the explanation of the court shows that he merely objected to either of said jurors serving on the panel, and at the instance of appellant they were stood aside. Appellant can not unreasonably delay a trial because of mere clerical mistakes in summoning the venire.

Appellant's next exception is "that the court ordered a venire of fifty men, when the defendant had asked for a venire of sixty men; and in

truth and in fact only forty-nine men were selected and drawn, and one of them—T. Faulk—was dead at the time said venire was drawn, and one of whom—A. J. Pounds—there was no such man as was thus drawn." The court, in his explanation, says "that he ordered a venire of fifty men; that through inadvertence the name of N. E. Grubbs was placed upon the list twice, and that the names of R. E. Dubose and C. A. Bryant were, by mistake of the clerk, placed upon the special venire, instead of the names of R. S. Dubose and C. A. Bradley." We hold that these are mere clerical errors that do not vitiate or render null and void the venire, or the action of the court in ordering the venire. Under the statutes of this State the court can order a venire of any number not less than thirty-six, and the fact that appellant asked for sixty veniremen, and the court ordered only fifty, and the further fact that one of those parties was dead at the time the venire was drawn, would not vitiate the venire, nor should a motion prevail to quash the same. We have reviewed all of appellant's exceptions to the venire stated in his bill of exceptions, and do not think any of them indicate that appellant has been deprived of any right guaranteed to him under the laws of this State. Gay v. State, 40 Texas Crim. Rep., 242; Powers v. State, 23 Texas Crim. App., 42; Habel v. State, 28 Texas Crim. App., 588; Jones v. State, 31 Texas Crim. Rep., 177; Stephens v. State, 31 Texas Crim. Rep., 365; Willson's Texas Crim. Stats., art. 651, note 1; Code Crim. Proc., art. 642.

We note that the appellant complains of the failure to serve him with a copy of the venire for the first time in his motion for new trial. We presume that this clause of the motion for new trial is predicated upon the supposed errors in the ruling of the court permitting the sheriff to correct the names of certain veniremen, and the other informalities stated above. The presumption is that all officers perform their duty, and it is incumbent on appellant to show otherwise by bill of exceptions wherever they fail to perform their duty. The service of a copy of the venire, although containing clerical errors, is not reversible error. Bowen v. State, 3 Texas Crim. App., 617; Gay v. State, 40 Texas Crim. Rep., 242.

Appellant's bills numbers 2 and 3 complain of the action of the court instructing the sheriff to summon talesmen instead of summoning the regular jury of the court. As we understand the statute, it directs the court to swear the officer,—which the trial court in this instance certifies he did; and that said officer shall go out, and summon a certain number of talesmen, as ordered by the court. As to appellant's objection as to the absence of J. R. Sojourner, we think the explanation of the court fully disposes of this objection. It appears from the explanation that the juror was sick at the beginning of the week, he being on the regular jury; and that the court excused him from the regular jury; that he lived eighteen miles from court; and that the affidavit taken of the juror shows that he was unable to attend court. We think it would have been unreasonable delay of court to have forced

41st Crim. Rep.—12

the court to wait for the juror Sojourner, and, furthermore, we do not think any injustice is shown to have been done appellant. Thompson v. State, 33 Texas Crim. Rep., ·217; Roberts v. State, 5 Texas Crim. App., 141; Parker v. State, 33 Texas Crim. Rep., 111.

What is said with reference to bills numbers 1, 2, and 3 disposes of bill number 4.

Bill number 5 complains of the court's failure to charge on murder in the second degree, because the case is one of circumstantial evidence. ·The evidence in this record discloses an assassination, on express malice, of the deceased, and the circumstances point irresistibly to the conclusion that appellant is the party who committed the assassination. Being an assassination, the evidence precludes murder in the second degree, and hence that issue is not raised, and therefore the court did not err in failing to charge upon murder in the second degree. Blocker v. State, 27 Texas Crim. App., 42; Smith v. State, 40 Texas Crim. Rep., 391; Morgan v. State, ante, p. 102.

Appellant's sixth bill complains of the court's definition of circumstantial evidence. The gravamen of the complaint is that the court omitted the following phrase, to wit: "That the circumstances must be consistent with each other and with the main facts sought to be established." The charge contains the clause complained of by appellant. We have examined the charge of the court, and find it an exact reproduction of the charge. in Baldez v. State, 37 Texas Criminal Reports, 413. There are other cases in which this charge has been approved by this court. The charge is sufficient. Trevino v. State, 38 Texas Crim. Rep., 66; Bennett v. State, 39 Texas Crim. Rep., 639.

Bill number 7 complains of the following paragraph of the court's charge, to wit: "Express malice is where one with a sedate and deliberate mind and formed design unlawfully kills another, which formed design is evidenced by external circumstances disclosing that inward intention,—as lying in wait,—antecedent menaces, former grudges, or concerted schemes to do bodily harm, or other circumstances showing sedate and deliberate mind and formed design unlawfully to kill, or inflict serious bodily harm." As we understand it, appellant objects to the charge because it fails to define the degree of "serious bodily harm" necessary to constitute express malice. We can not see how the failure of the court's charge in this particular could have injured the rights of appellant. The circumstances of the killing exclude any other intention than that to take the life of the deceased. He could not have possibly intended any other character of harm than death. We do not see how the error, if error, was one calculated to injure the rights of appellant. Code Crim. Proc., art. 723; White v. State, 13 Texas Crim. App., 259; Walker v. State, 28 Texas Crim. App., 505.

His eighth bill repeats the objections stated in bill number 7, and furthermore urges that the court, by giving a form of verdict if they found defendant guilty, and no alternative form in the event of acquittal, the jury were left without option to convict. We find, from

an inspection of the charge, that the court instructed the jury that, if they found the defendant guilty, they would assess his punishment at —— years, etc.; and, if they found defendant not guilty, etc., they would simply so say in their verdict. This is certainly both fair to the State and the defendant, and gives no undue prominence to either phase of the evidence in the case, and therefore was not misleading, or injurious to the rights of appellant. Another objection urged in this bill is that the court failed to define the terms "cool, sedate, and deliberate." They are without technical meaning, and are and should be received in their usual and ordinary acceptation, and need not be defined.

We do not deem it necessary to review the facts in detail upon which the jury based their verdict, but, after a very careful inspection of the same, we are constrained to say the jury were amply authorized to find the verdict they did, and it will not be disturbed. The judgment is in all things affirmed.

*Affirmed.*