OSCAR SKIDMORE, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 3271

August 3, 1939. 92 P.(2d) 979.

*Oliver C. Custer* and *Grant L. Bowen,* for Appellant:

*Gray Mashburn,* Attorney-General; *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General; *Ernest S. Brown,* District Attorney, and *Nash P. Morgan,* Assistant District Attorney, for Respondent:

## OPINION

By the Court, ORR, J.:

The appellant was, by means of an information filed in the Second judicial district court of the State of Nevada, on the 14th day of November 1938, charged

with the crime of committing a lewd act with and upon the person of Irene Taylor, a child of the age of five years. Thereafter the appellant was tried, found guilty and sentenced to a term in the state prison. From the judgment of imprisonment and order denying motion for new trial this appeal is taken. The appellant will be hereinafter referred to as defendant. The facts, insofar as it is necessary to detail them, are as follows:

Defendant, during the month of September 1938, resided in cabin No. 3 of a row of cabins facing north on the Southern Pacific siding, which siding runs east and west between an alley on the east, Washington street on the west, West Second street on the south, and the Southern Pacific railroad on the north, in Reno, Washoe County, Nevada. The cabin east of the defendant's cabin, or cabin No. 4, was occupied by a man named Funk, and one Pat Scanlan occupied cabin No. 2, which adjoined defendant's cabin to the west. South, along the alley, about fifty feet away, was situated a house occupied by Irene Taylor and her mother. The child, Irene Taylor, together with other children, made a practice of playing in the vicinity of the cabins, and at times visited in the different cabins. On the 24th of September 1938 Irene Taylor met defendant. In the afternoon of said day she went into the cabin occupied by him, and remained there for about twenty minutes. Mr. Funk instructed a playmate of Irene, one Josephine Cheney, to inform Mrs. Taylor that Irene was in Skidmore's cabin and to get her out of there. In response to this message, Mrs. Taylor sent her oldest son, Edward Tilliman, to Skidmore's cabin for Irene. Edward Tilliman testified as follows relative to the circumstances of his visit to the cabin:

"Q. Will you tell the jury what you did? A. I went right over to his cabin—to Skidmore's Cabin No. 3 and knocked on the door and asked for Irene, and he said, 'Wait a minute' and I waited about a minute and she came out.

"Q. Did he threaten you any? A. No, he did not.

"Q. Did he open the door when you came to the cabin? A. He just cracked open the door wide enough and I could hear what he said easily.

"Q. Did he open it wide enough so you could see whether he was dressed or undressed? A. Well, he did not have the curtain up and I saw through the window at the top of the door and he did not have a top shirt on.

"Q. He did not have a top shirt on? A. He had an undershirt on.

"Q. He had an undershirt on? A. Yes, sir.

"Q. Did he ask you to come in the house? A. No, sir.

"Q. Did he tell you to come in the house? A. I never tried to go in.

"Q. He just said, 'Wait a minute.' A. Yes."

The following Monday Irene Taylor attended her class at the Catholic school in Reno, Washoe County, Nevada. On this date she complained to her teacher that she was suffering pain. The teacher made an examination, notified her mother, and sent the child home. Thereafter the child was taken to the office of Dr. Dwight L. Hood, who made an examination and had certain laboratory tests made, and determined therefrom that the child was suffering from gonorrhea. The child was later taken to the Washoe General hospital and placed under the care of Dr. L. R. Brigman, a child specialist, whose examination also disclosed that the child was suffering from the said disease. On the 29th of September 1938 the defendant was taken into custody by Sheriff Root. The same day Deputy Sheriff Earl Griffith made a request of the county physician, Dr. George A. Cann, to examine defendant to determine whether he, defendant, was afflicted with gonorrhea. Defendant was, on September 29, 1938, taken to Dr. Cann's office and an examination made. As a result of such examination it was determined that defendant was suffering from said disease. Later Deputy Sheriff Griffith took the defendant to the Washoe General hospital, where the following transpired:

"A. I taken him directly to the little Irene Taylor

room and the nurse admitted us, and as we walked in
why she, the little girl's sister was there, Alice, and
almost the minute that we walked in the little girl
pointed her finger at Skidmore, and said, 'That is the
man.'

"Q. Then what happened then—what happened after
that, if anything? A. I started talking with the little
girl—little Irene Taylor, and I asked her several ques-
tions, and she seemed to be scared, and so she told me
that if I would take Mr. Skidmore out of the room,
pointing to him, that she would talk. So I told her that
I could not do that after all as Skidmore was in my
custody and that I could not allow him to leave or go
out of my sight.

"Q. Could he hear you from where he was standing?
A. He could. Yes, he was standing right along side of
me. At that time I asked Skidmore to stand over in the
corner of the room and turn his back to us, and then I
talked to the little girl and she seemed to be more quiet
after that, and I asked her if Skidmore—

"The Court: Was he within hearing distance of the
little girl? A. Judge, your Honor, I should judge prob-
ably in five or six feet or something like that.

"The Court: Go ahead. A. After Mr. Skidmore
stood over in the corner of the room which is a very
small distance, it is not a large room, I asked the little
girl, 'If that was the man that had put his penis between
her little legs?' And she says, 'Yes, he is the one.'
About that time Skidmore turned around and he says,
'You had better be careful what you say' or words to
that effect, and that was practically all of the conversa-
tion and shortly after that we left."

The witnesses Scanlan and Funk testified they saw
the little girl in or near the cabin, and one of them testi-
fied that he heard a whispered conversation in the cabin
occupied by defendant, and identified one of the voices
heard as Irene's.

Defendant makes five assignments of error. We have

given careful consideration to each, and have reached the following conclusions relative thereto:

As to whether there is merit to the contentions made by defendant depends upon the admissibility of the testimony of Dr. Cann as to results of his examinations of defendant, and of Deputy Sheriff Griffith relative to what transpired at the Washoe General hospital. We will first proceed to a consideration of those questions.

Did the trial court err in admitting the testimony of Dr. Cann? As will be noted, it is contended that to admit such testimony was a violation of the confidential relationship existing between physician and patient; second, that permtting such evidence invaded defendant's constitutional privilege against self-incrimination.

■ The general rule is that to render a physician incompetent to testify, the information which he is called upon to disclose must have been acquired in his professional capacity while attending the patient. 70 C. J. p. 443, sec. 597; Norwood v. State, 158 Miss. 550, 130 So. 733.

Defendant cites section 8974 N. C. L., which reads as follows: "A licensed physician or surgeon shall not, without the consent of his patient, be examined as a witness as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient; provided, however, in any suit or prosecution against a physician or surgeon for malpractice, if the patient or party suing or prosecuting shall require or give such consent, and any such witness shall give testimony, then such physician or surgeon, defendant may call any other physicians or surgeons as witnesses on behalf of defendant, without the consent of such patient or party suing or prosecuting."

■ It will be noted that the prohibition against a physician testifying exists only as to information acquired in attending the patient *which was necessary to enable the physician to prescribe or act for the patient.* A physician may testify where an examination is made for the

purpose alone of searching for physical symptoms bearing upon the guilt or innocence of a defendant and not for diagnosis and treatment. 70 C. J. p. 440, sec. 590.

In this case the examination was made at the request of the deputy sheriff, and was for the express purpose of determining whether the defendant was infected with the disease of gonorrhea, and not for the purpose of diagnosis and treatment. If treatment was asked and given, it was after the examination made at the request of Deputy Sheriff Griffith.

■ Defendant lays stress on the fact that Dr. Cann made a second visit to the county jail to examine him, and attempts to draw the inference that such second visit was for the purpose of treatment. The testimony of Dr. Cann is that he made the second trip for the purpose of checking up on the findings made on the first visit, and that it was not at the request of the defendant. The objection to the testimony of Dr. Cann on the first ground is without merit; it clearly comes within the exception.

■ As to the examination having invaded the constitutional right of the defendant, in that he was forced to give testimony against himself, we find, as was said in the case of State v. Oschoa, 49 Nev. 194, 207, 242 P. 582, 587, "the contention has been resolved against appellant by a former decision of this court."

■ In presenting this question counsel have cited many cases from other jurisdictions, but failed to cite decisions of this court which establish the rule that the privilege afforded by the constitution is not merely immunity from compulsion, but testimonial compulsion. State v. Ah Chuey, 14 Nev. 79, 33 Am. Rep. 530; State v. Petty, 32 Nev. 384, 108 P. 934, Ann. Cas. 1912D, 223; State v. Oschoa, 49 Nev. 194, at page 207, 242 P. 582.

The case of Ah Chuey, supra, is considered "a leading case among those asserting the right, that the constitutional provision that no person shall be compelled to be a witness against himself is construed to mean

that no one shall be required to testify against himself."
28 L. R. A. p. 700, note II. See, also, State v. Barela
et al., 23 N. M. 395, 168 p. 545, L. R. A. 1918B, 844;
Wigmore on Evidence, vol. 4, secs. 2263 and 2265.

The examination in this case was made in the privacy
of a physician's office; there was nothing in the exam-
ination itself which tended to humiliate or degrade
defendant or otherwise prejudice him before the jury,
and hence this case does not come within any of the
exceptions mentioned in the Ah Chuey case, supra. If
testimony of the result of the examination tended to
degrade defendant in the eyes of the jury, it was the
inevitable result of a degrading condition and situation
in which he had placed himself. The evidence was prop-
erly admitted.

We next consider the admissibility of the testi-
mony of Deputy Sheriff Griffith as to what transpired
in the Washoe General hospital. The trial court found
the child Irene Taylor incompetent to testify because of
her age. It is the contention of defendant that the child
being incompetent to testify, any statements made by
her would likewise be incompetent. In support of this
contention cases are cited where statements made by
parties mentally incompetent were excluded, on the
theory that third parties could not be permitted to
testify for them. Whether or not such testimony was
admissible in this case must rest upon a different theory,
to wit: were the accusatory statements made in the
presence of the defendant directly or unequivocally
denied by him, and if not, did such failure to deny con-
stitute an admission by conduct? Under such circum-
stances the incompetency of the party making the
accusatory statements is no bar to their admissibility.
Underhill on Criminal Evidence (4th ed.), p. 500. This
point was not referred to by defendant in his objection
to the evidence in the trial court, but we think the objec-
tion on the ground that it was hearsay is sufficiently
broad to entitle the matter to be considered. 20 Am.

Jur., p. 483, par. 570, states: "As a general rule, when a statement tending to incriminate one accused of committing a crime is made in his presence and hearing and such statement is not denied, contradicted or objected to by him, both the statement and the fact of his failure to deny are admissible in a criminal prosecution against him, as evidence of his acquiescence in its truth."

To the same effect is Underhill's Criminal Evidence (4th ed.), p. 489. It is the law that when one is accused and he makes prompt and direct denial, the statement is not admissible.

So we find it necessary to determine whether or not the statement made by Skidmore, to wit: "You had better be careful what you say," is a direct, postive and unequivocal denial.

The attitude assumed by defendant at the time of making the remark, in walking toward the bed in which the little child was lying and looking directly toward her, as testified to by witness Griffith on cross-examination, convinces us that his statement was more in the nature of a threat than of a denial; that he was, under the circumstances, more concerned with what the little girl might yet say than with denying that which had been spoken, apprehensive lest more damaging statements come from the lips of the innocent little child, and believing that she stood in terror of him, as evidenced by the testimony of Deputy Sheriff Griffith that she seemed scared and wanted the defendant taken out of the room, endeavored to further frighten her.

Defendant also contends that said testimony is inadmissible because at the time the defendant was in custody. Upon this question we find the authorities divided. 1 R. C. L. p. 479; Wharton's Criminal Evidence (11th ed.), 1 and 2, "Confessions and Admissions," par. 651, p. 1101; 20 Am. Jur., "Evidence," sec. 574.

We follow the rule that the mere fact that a party is in custody should not of itself be permitted to exclude testimony as to his conduct under accusations of guilt. The circumstances of the particular case

should control, and not a general iron clad and fast rule. We cannot, by close judicial construction, too tightly seal the lips of innocent little victims, lest we thereby lend aid and encouragement to degenerates. The testimony of Deputy Sheriff Griffith above referred to was properly admitted.

As to the evidence of the child Josephine Cheney, substantially the same thing testified to by her was admitted by defendant, namely, that the Cheney girl and the Taylor girl had been in Skidmore's cabin; hence the defendant was not prejudiced thereby.

The testimony of Dr. Cann and Deputy Sheriff Griffith being admissible, and considering such testimony in connection with all of the other testimony in the case, there is present all of the elements necessary to establish the corpus delicti, proof of a lewd and lascivious act committed on the body of the child by defendant. The testimony of Dr. Cann is strongly corroborative of that fact, as is the testimony of other witnesses in the case. This disposes of subdivisions (a) and (b) of assignment one.

Assignments two and four have hereinbefore been taken care of. As to assignment one, we find, upon a consideration of the whole record, that the evidence is amply sufficient to establish the guilt of defendant.

Defendant complains of the rapidity with which the jury reached its conclusion in this case, and assigns as a reason therefor that the jury were incensed because counsel for defendant attempted to criticize certain conditions which were permitted to exist in the city of Reno; he attempts to set up this matter by way of affidavit, and insists that because no answering affidavits were filed the matter should be taken as true. The statement of the defendant relative to this matter is purely a conclusion having no evidentiary value, therefore no answering affidavits were necessary. It is entirely probable that the jury had no difficulty in reaching a verdict because of the convincing character of the evidence, rather than because of a resentful state of mind.

 Defendant contends that the jury disregarded the instruction of the court to the effect that if the evidence could be reconciled either upon the theory of innocence or of guilt, the law requires that the theory of innocence must be adopted. We do not think so. They were amply justified in adopting the theory of guilt, from the evidence adduced.

No prejudicial error appearing, the judgment and order appealed from are affirmed.