## TERRY LEE WEATHERS, Appellant, v. THE STATE OF NEVADA, Respondent.

### No. 19096

April 25, 1989                                        772 P.2d 1294

*Morgan Harris,* Public Defender, *Robert L. Miller,* Deputy Public Defender, Clark County, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

# OPINION

By the Court, SPRINGER, J.:

A jury convicted Terry Lee Weathers of second-degree murder with use of a deadly weapon. His principal claim on appeal is that the admission of his self-incriminating statement violated Miranda v. Arizona, 384 U.S. 436 (1966). Although we agree that the court improperly admitted the statement, we hold that its

admission was harmless beyond a reasonable doubt. Thus, we affirm.

## Facts

On April 4, 1987, Ronald Bivins was shot in the head and killed during a drug transaction. Bivins's friend, Jack Consijo, testified that he and Bivins drove to F and Washington Streets in North Las Vegas to buy rock cocaine. A male approached the truck and presented some rock cocaine to Bivins. Bivins handed the rocks back, saying that they were too small. The seller then shot Bivins in the head. Even though Consijo originally told the police that he did not think he could identify the assailant if he saw him, five days later he picked the appellant, Terry Lee Weathers, out of a lineup. Weathers took the stand and denied having shot Bivins.

Henry Harris testified that he had known Weathers for about fifteen years. He stated that he heard a shot come from the direction of Bivins's truck and looked up to see Weathers running away from the truck.

Ronald Free testified that he was housed in the same jail cell as Weathers. Weathers told him that Weathers had been selling cocaine in North Las Vegas and that he had shot a prospective buyer during an argument over a sales transaction. Weathers denied having made these statements to Free.

Finally, Lamar Richardson testified that Weathers had come to his home a couple of miles from the murder scene later on the evening of the shooting. Weathers told Richardson that "somebody tried to rip him off" that evening. Weathers also denied having made this statement to Richardson.

The day after the shooting, Weathers was arrested for a previous unrelated battery. Detective Dillard was contacted at his home and asked to come talk to Weathers about the murder involved in this case. When Dillard arrived at the station, Weathers was handcuffed to a security post in an interview room in the detective bureau.

When Dillard entered the room, he said to Weathers, "Shut up. Don't say anything. When I'm through talking, you can talk." Dillard then told Weathers that he was investigating the homicide of Ronald Bivins that occurred the night before on F Street. He said that Weathers was considered a suspect and that there was no problem with mistaken identity. He stated that a witness who had known Weathers for some time had seen Weathers running from the scene. At that point, Weathers began nodding his head up and down and said, "I know who he is." No one had told Weathers who the witness was.

Dillard then read Weathers his *Miranda* rights, and Weathers indicated that he would not waive those rights and wanted to

speak to a lawyer. At that time, Dillard ended his conversation with Weathers.

Despite defense counsel's objection to the admission of Weathers's statement to Dillard, the court admitted it as evidence. The jury found Weathers guilty of second-degree murder, and Weathers now appeals.

## Discussion

The court erred when it admitted into evidence Weathers's statement made to Detective Dillard before the detective read him his *Miranda* rights. The United States Supreme Court has declared that "interrogation" need not take the form of express questioning, but may also be conduct amounting to the "functional equivalent" of express questioning:

> [T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.
>
> . . . .
>
> [T]he definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980) (emphasis in original).

In *Innis,* the police arrested the defendant for robbing a taxicab driver. The defendant had used a shotgun in the robbery. The police immediately advised him of his rights. The defendant refused to waive his right to remain silent, and two policemen escorted the defendant toward the police station. While en route, the officers engaged in a discussion concerning the whereabouts of the shotgun. One officer said, "God forbid one of [the handicapped children] might find a weapon and shells and they might hurt themselves." The defendant interrupted the conversation and led the officers to the shotgun. The Court found that this did not violate the fifth amendment because "the conversation was, at least in form, nothing more than a dialogue between the two officers to which no response from the [defendant] was invited." *Id.* at 302.

Cases since *Innis* have generally compared their facts to the facts of *Innis,* finding that the defendant's fifth amendment right was not violated if the police conduct was "less evocative" of an

incriminating statement than the conduct in *Innis*. United States v. Thierman, 678 F.2d 1331, 1334 (9th Cir. 1982).

In this case, unlike *Innis,* the detective spoke directly to Weathers. Impliedly, at least, he accused Weathers of shooting Ronald Bivins, and he confronted Weathers with the eyewitness evidence against him. The detective's remark, "When I'm through talking, you can talk," invited Weathers to respond. Detective Dillard engaged in this kind of approach to Weathers knowing that he was going to arrest Weathers for the homicide based on the evidence the police had previously obtained from the eyewitness, Henry Harris. Instead of first reading Weathers his *Miranda* rights and allowing Weathers to invoke immediately his right to remain silent, Dillard confronted Weathers with the evidence. If the detective expected Weathers to remain silent in the face of such a confrontation, his expectation was unreasonable. The law recognizes that some kind of reaction, incriminating or otherwise, can be expected from one's being accused of criminal conduct. *See* Skidmore v. State, 59 Nev. 320, 92 P.2d 979 (1939). The law also recognizes that a person is expected to respond with exculpatory evidence or denial when wrongly accused. Accordingly, Detective Dillard's statements to Weathers before reading Weathers his rights were the functional equivalent of express questioning, and the trial court improperly admitted Weathers's response into evidence.

The United States Supreme Court has determined that a constitutional error involved in admitting evidence will be held harmless and the conviction upheld if the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18 (1967). More recently, the Supreme Court has framed the inquiry as whether, absent the inadmissible evidence, "it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." United States v. Hasting, 461 U.S. 499 (1983).

In a case similar to this case, the Supreme Court held that, even though the police had obtained a confession by trickery, the conviction should not be reversed because the evidence overwhelmingly indicated guilt. Milton v. Wainwright, 407 U.S. 371 (1972). In *Milton,* a police officer posed as a fellow prisoner and elicited incriminating statements from the defendant which the trial court allowed into evidence. The court refused to reverse the conviction because the state had three other untainted confessions and strong corroborative evidence. *Id.* at 372-73.

The evidence against Weathers is overwhelming. Consijo testified that Weathers approached the truck, offered the cocaine to Bivins and then shot Bivins. Consijo was in the truck with Bivins

when Bivins was shot and five days later picked Weathers from a line-up and identified Weathers as the assailant. Harris saw Weathers running from the truck immediately after the shot was fired. Harris had known Weathers for fifteen years. Free testified that, while he and Weathers were both in jail, Weathers had told Free that he had shot a prospective buyer. And finally, Richardson testified that Weathers came to his home later on the evening of the shooting and told Richardson that "somebody tried to rip him off." Even though at trial Weathers denied being present at the scene of the shooting and denied having made the statements to Free and Richardson, we hold that the evidence is sufficiently compelling to find the admission of Weathers's self-incriminating statement harmless beyond a reasonable doubt.

We have also considered Weathers's contention on appeal that the prosecutor improperly commented on Weathers's post-arrest silence. Weathers was not silent but rather made a statement which he later contradicted in his testimony at trial. While the statement should not have been admitted in the first place, the prosecutor's comment on it after the trial court had found it admissible was not misconduct. Therefore, having found no prejudicial error, we affirm the judgment of conviction.

YOUNG, C. J., MOWBRAY and ROSE, JJ., concur.

STEFFEN, J., concurring:
I concur in the result only.