[No. 2002]

# STATE OF NEVADA, RESPONDENT, v. NIMROD URIE, APPELLANT.

1. CRIMINAL LAW—APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE.

   Admission of improper evidence is not as a rule prejudicial, where subsequently withdrawn, with directions to the jury to disregard it.

2. CRIMINAL LAW—TRIAL—APPEAL—CURING ERROR.

   The court admitted accused's alleged confession in evidence, and afterwards, upon it appearing that it was made after the sheriff had told accused that it would be better for him to tell the truth, ordered the confession stricken and directed the jury to disregard it, and also instructed that the jury must not consider any evidence stricken by order of the court, but must decide the case solely upon the evidence actually given and allowed. *Held*, that any error in admitting the confession in evidence was cured by the court's action.

3. CRIMINAL LAW—APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE.

   Any error in admitting an alleged confession in evidence could not have prejudiced the accused where he testified to substantially the same facts stated in the confession.

4. WITNESSES—WAIVER OF CONSTITUTIONAL PRIVILEGE.

   When accused waives his constitutional privilege not to testify, and becomes a witness for himself, he cannot testify to that part of the transaction favorable to himself and claim his privilege as to the remainder.

5. CRIMINAL LAW—APPEAL—ASSIGNMENTS OF ERROR—FAILURE TO DISCUSS.

   Accused's counsel waived assignments of error not discussed in his brief.

APPEAL from the Sixth Judicial District Court, Humboldt County; *Edward A. Ducker*, Judge.

Nimrod Urie was convicted of murder in the first degree, and he appeals from the judgment of conviction and order denying a motion for new trial. **Affirmed.**

The facts sufficiently appear in the opinion.

*James H. Wise*, for Appellant:

It is the duty of the prosecution to show that the confession was voluntary. There is absolutely no proof that the confession was voluntary. All the evidence of

Sheriff Lamb was conclusions and not facts, and should have been ruled out at the time. The rule is that confessions made to parties in authority, such as sheriffs, deputy sheriffs, prosecuting attorneys and constables, are presumed to have been made by promises. (*People* v. *Thompson*, 84 Cal. 568, 24 Pac. 384; *People* v. *Barrack*, 49 Cal. 342; 12 Cyc. 471, note 39; *People* v. *Silvers*, 92 Pac. 506; *People* v. *Loper*, 112 Pac. 720; *Bram* v. *United States*, 168 U. S. 532; *State* v. *Saunders*, 14 Or. 300, 12 Pac. 441; *State* v. *Moore*, 32 Or. 65, 48 Pac. 468; *Mitchell* v. *State*, 94 Ala. 68; *State* v. *Pancoast*, 67 N. W. 1062; *People* v. *Rozelle*, 78 Cal. 84, 20 Pac. 36; *People* v. *O'Brien*, 66 Cal. 602–603, 6 Pac. 695; *People* v. *Gallagher*, 100 Cal. 466–476, 35 Pac. 80.)

It was error for the court to permit the confession to be read in evidence and then afterwards to show the facts under which said confession was obtained, and then to strike out the confession. (*State* v. *Bixcoe*, 67 Md. 6, 8 Atl. 571; *State* v. *Fox*, 121 N. Y. 449, 24 N. E. 923; *State* v. *Soto*, 49 Cal. 67.)

Where a confession has gone to a jury upon preliminary proof that it was voluntary and it subsequently appears during the trial that it was involuntary, it is the duty of the court to withdraw such confession from the consideration of the jury and to instruct them that they should wholly disregard it.

*Cleveland H. Baker*, Attorney-General, for Respondent:

If any error was committed by the introduction of said confession, it was thoroughly cured by the action of the court in striking the same from evidence and instructing the jury to disregard the same.

The cross-examination of the appellant was proper upon the grounds that when the accused waives his constitutional privilege and voluntarily takes the stand as a witness in his own behalf and relates a part of his connection with a matter, he is not allowed to relate merely that portion of the transaction which is favorable to himself, but can be compelled to detail the entire transaction

whether criminatory to himself or not. (2 Willoughby on the Constitution, 825; *Brown* v. *Walker*, 161 U. S. 597.)

"A defendant cannot be prejudiced by the admission of a confession which he voluntarily acknowledges, under oath, is the truth." (*State* v. *Johnny*, 29 Nev. 219.)

By the Court, NORCROSS, J.:

Appellant was jointly indicted with one J. Frank Tramner by the grand jury of Humboldt County for the murder of one Eugene Quilici. Upon a separate trial before the Sixth judicial district court he was convicted of murder in the first degree, and the penalty of death was imposed by the jury.

From the judgment based on the verdict and from an order denying a motion for a new trial, the defendant has appealed.

The case was finally submitted to this court on briefs. Although the record contains some sixteen assignments of error, only two propositions involving alleged error are considered in the briefs filed.

The court admitted as a part of the state's evidence, over the objection of defendant, the following written confession of the defendant: "My full name is Nim R. Urie. My age is 23 years on August 1st. I know Diffendarfer. I knew Diffendarfer about fourteen years. I knew Frank Tramner since last April. Next day after Tramner returned from having taken Diffendarfer to Dutch Flat, I told him he could look after things there at the ranch, and I would come up here at Winnemucca to see if I couldn't get work, and he told me, 'It is no use going to work. You don't need to work,' he says. 'I will tell you how we can make some easy money'; and I says, 'All right, how is that?' And he says, 'We will go up here, and hold up the Dago saloon.' I told him I didn't want to do anything of that kind, and I could go to work in a few days. I could sell the horses anyway, and we didn't need to do anything like that. He says, 'Well, we are going to do it anyhow'; and then he went to work and told me how easy it would be to

get this money, and I told him, 'No'; that I didn't want to make that kind of money. And he says, 'We are going to do it, and you have got to do it; if you show any signs of turning me down or running off, I will kill you.' And then the next day we still talked about it, and I told him that day that if we did have to do it, and would kill any one, it would be bad, that we would get caught, and would both get in trouble, and he says, 'We won't need to kill him at all; we will go in there and throw our guns on him, and tell him to throw up his hands.' And I told him I didn't want to do it at all. And he told me again that I had to do it, and I came up here to Winnemucca the day before this happened, and before I left he told me that if I tried to run off, or get away or anything, that he would kill me if he had to follow me for ten years to do it. I thought when I started I would go anyhow, and I stayed up here one day thinking about it, and then I thought that I would talk him out of it, and I went back. I went down home that night, and he asked me what I thought of it by that time, and I asked him if he wouldn't let me go, and go some place and go to work, and he said, 'No, you got to do this, and there is no use saying any more; you have got to do it.' Then I didn't say any more to him till the night that we started, and he got up the horses and came into me and says, 'You might as well get ready; we are going to do that.' And then he went in and fixed up these masks. And then we got supper, and then we went out and got on our horses, and he took the guns, and, when we got within two or three hundred yards of the Dago saloon, he tied my horse and took a rope, and tied my hands to the saddle horn. I was standing off to the side of the horse, and then he went up to Slaughter's saloon and got a bottle of whisky. And he came back and says, 'Throw some of this into you, and maybe you will feel better afterwards.' I took three or four big drinks, and then we put the masks on, and then he loaded the rifle and handed it to me, and told me to go ahead, and I went ahead until we got to the saloon.

And, when I got to the saloon door, I said, 'Frank, let's not do it'; and he shoved his gun up against my back, and said, 'Go on.' We went inside of the door, and I threw down on the Dago. Frank says, 'Throw up your hands,' and the Dago didn't do it. He got up and grabbed my rifle, and Frank shot; the Dago started to run out the door. Frank turned around to me, and says, 'What have you got that gun for? Why don't you use it?' He grabbed it out of my hands, and shot just as the Dago went out the door. Then he turned around, and handed the gun to me, and the Dago woman started to run, and he shot her with the six-shooter, and then he says to me, 'Lay your gun on the bar and go in, and get the money out of the register.' And then told me to put the money in my pocket. Then he told me to go in and search the rooms. And, when I went into this back room, these two boys were there. I went back and told Frank, 'There is some one in there'; and he says, 'Take your gun, go back, and make them hold up their hands, and ask them where the money is.' And then he says, 'We will go out the back door now.' And we went out the back door, and we went down to where our horses was, and I threw the cartridge out of my rifle, and he said, 'Give me that gun.' Then we got on our horses and rode down home. Then we got off and he told me to pull off the overalls and jumper and things I had on, and then he took me in the house and locked the door, and told me to give him the money that I had. Then he went off and rode off some place, and was gone about one-half hour. And then he came back. He came back into the room. He told me, 'Now you don't dare squeal. You are in for it just as bad as I am'; and he told me, 'Now you want to play sick in the morning'; and he says, 'Tell them that when I went up town last night, I went up to get some whisky and medicine for you.' And he says, 'Now, if they catch us, you want to act as if nothing is wrong, and that you didn't know anything about it and that you were home sick'; and he says, 'If you don't do this and we get out of it, if you

show any weak signs, I will kill you.' When I gave him these clothes, he asked me where the mask was, and I says, 'I guess I have lost it.' He says, 'You are a pretty son of a bitch. I ought to plug you right here.' I told him that I didn't do it intentionally, that I didn't mean to lose the mask. We went to bed about 10:30 slow time. When we got to where he tied the horses, he said he would have to go up and see how things were. That I make this confession freely and voluntarily and without persuasion or promise of leniency of any kind either by Sheriff Lamb, Mr. Rich, J. A. Callahan, or any other person or persons whomsoever."

Subsequently the court ordered the confession stricken out, and at the time instructed the jury to disregard the same. The court also in its instructions embodied the following: "The jury must not regard or consider any evidence which has been excluded by the court or stricken out by the order of the court, but they must decide the case solely upon the evidence actually given and allowed."

It is contended that the court erred in the admission of this confession, and that the error was not cured by the court subsequently striking out the same. At the time the confession was offered witnesses testified to the effect that, although the confession was made while defendant was in the custody of the sheriff, it was a voluntary confession made without force, threats, or promises or inducements of reward or leniency.

Objection was made to the testimony offered in support of the confession that the questions asked by the district attorney were leading and calling for the opinion of the witnesses. The objections were overruled.

Counsel for defendant declined to cross-examine the witnesses at the time or to offer evidence showing, or tending to show, that the confession was not voluntary.

After the confession was admitted in evidence, and at a later period in the trial, counsel for defendant placed defendant on the stand, and had him testify relative to the circumstances of his making the confession. The

gist of his testimony was that the sheriff and district attorney told him that "it would be better for him if he would tell the right story."

Counsel for defendant also called the sheriff and other witnesses to the confession for cross-examination. As a result of this testimony, the court, among other matters, stated: "As it appears in the record here that the sheriff, who had the prisoner in custody at that time, admits in the record that he might have said that. As a matter of course Constable Rich later on testifies that he thinks that he didn't say it; but there is some doubt. There is some doubt in the court's mind as to whether that was said down there at that time by the sheriff. And for that reason, although the court is quite certain that on account of your not making the cross-examination at the proper time, and offering your testimony at that time when the foundation was being made, it would be no error. I am going to take plaintiff's Exhibit W, containing the alleged statements of the defendant, as read to the jury and admitted in evidence, from the consideration of the jury. And it will be so ordered."

[1, 2] It is a general rule that the admission of any improper evidence is not deemed prejudicial error when the same is subsequently withdrawn, and the jury directed to disregard it. A number of authorities supporting this well-recognized rule are cited in the brief of the attorney-general. It cannot be said, we think, under the facts shown, that any error which might have been committed in the admission of the confession was not cured by the subsequent action of the court.

[3] Even if we were to concede error in the admission of the confession, and that the same was not cured by its subsequent exclusion, no prejudicial error could be shown, for the reason that the defendant became a witness in his own behalf, and testified substantially in accordance with his confession. (*State* v. *Johnny,* 29 Nev. 203, 219; *State* v. *Williams,* 31 Nev. 360.)

Error is assigned in the overruling of certain objections

to the cross-examination of the defendant by the district attorney. The defendant was called as a witness in his own behalf and questioned by his counsel concerning a portion of his actions and those of his codefendant on the night of the murder and robbery. He detailed the events which transpired up to the time of the entry of the saloon of Quilici, but stopped short of detailing the circumstances of the actual shooting of Quilici. On cross-examination the district attorney, over the objection of defendant, was permitted to examine the defendant upon the events which transpired beyond the time covered by his direct examination. We think this was clearly proper.

[4] When defendant waives his constitutional privilege of remaining silent and becomes a witness in his own behalf, he cannot assume a right to detail a part of a transaction which he deems favorable to himself and claim an exemption upon subsequent facts forming part of the entire transaction. (*Brown* v. *Walker*, 161 U. S. 597, 16 Sup. Ct. 644, 40 L. Ed. 819; *Commonwealth* v. *Pratt*, 126 Mass. 462; *Evans* v. *O'Connor*, 174 Mass. 287, 54 N. E. 557, 75 Am. St. Rep. 316; *Samuel* v. *People*, 164 Ill. 379, 45 N. E. 728; *People* v. *Freshour*, 55 Cal. 375; Greenl. Ev. 451.)

"The general rule may be stated to be that, where a defendant takes the stand as a witness in his own behalf, he waives his right to refuse to answer questions which tend to incriminate him concerning all matters which were touched upon in his direct examination, and upon all other matters which are so related to his direct examination as to come within the proper limits of cross-examination. In other words, the defendant loses his character as a party, becomes a mere witness, and may be examined as fully as any other witness. If he makes any statement respecting the transaction, he may be required to state all." (Note to *Evans* v. *O'Connor*, *supra*, 75 Am. St. Rep. 332.)

[5] The fact that counsel for appellant did not refer in his briefs to any of the other assignments of error warrants the assumption that he places no reliance upon

them.    Such an examination of the assignments as is justified under the circumstances discloses no apparent prejudicial error.

The judgment and order appealed from are affirmed, and the court below is directed to fix a time and make all necessary and proper orders for having its sentence carried into effect by the warden of the state prison.