THE STATE OF NEVADA, RESPONDENT, v. CLAYTON OCTAVE FOUQUETTE, APPELLANT.

No. 3564

August 10, 1950.                    221 P.2d 404.

510

512

*Lewis, Hawkins & Cannon* and *John Bonner,* all of Las Vegas, and *E. R. Miller, Jr.,* of Ely, for Appellant.

*Alan Bible,* Attorney General; *Geo. P. Annand* and *Robert L. McDonald,* Deputy Attorneys General; *Robert E. Jones,* District Attorney of Clark County, Las Vegas; and *J. K. Houssels, Jr.,* Deputy District Attorney, Las Vegas, for Respondent.

## OPINION

By the Court, McKNIGHT, District Judge:

Appellant was convicted of murder in the first degree and his punishment fixed at death by the jury. His appeal is from the judgment and from the order denying his motion for new trial.

The pertinent facts will be stated in discussing some of the many assignments of alleged error.

Appellant first contends that the court, in violation of and contrary to the provisions of the 5th, 6th and 14th amendments to the constitution of the United States, article I, section 8, of the Nevada constitution, and section 10654, N.C.L.1929, erred in denying defendant's application to bring two witnesses from California to Nevada, at the expense of Clark County, to testify in his behalf.

The 5th and 6th amendments, relied upon by appellant, as well as all of the remaining first eight amendments to the federal constitution, have reference only to powers exercised by the government of the United States, whether by congress or by the judiciary, and are in no wise a restriction upon the power of the states or in any respect applicable to state courts. Eilenbecker v. District Court, 134 U.S. 31, 10 S.Ct. 424, 35 L.Ed. 801, 803;

State of Ohio ex rel. Lloyd v. Dollison, 194 U.S. 445, 24 S.Ct. 703, 48 L.Ed. 1062, 1065; State v. Jones, 7 Nev. 408, 415; State v. Chin Gim, 47 Nev. 431, 442, 224 P. 798; State v. Squier, 56 Nev. 386, 399, 54 P.2d 227.

The portion of the 14th amendment to the constitution of the United States and the portion of article I, section 8, of the Nevada constitution, relied upon by appellant, provide, in effect, that no person shall be deprived of life, liberty, or property without due process of law.

■ The terms "due process of law" and "law of the land" are synonymous. Vol. 13, Words and Phrases, Perm.Ed., pages 535, 536; 16 C.J.S., Constitutional Law, page 1142, sec. 567, note 15.

■ The "law of the land," as applicable to criminal cases, in state courts, necessarily means the law of the state where the offense is committed and where the trial takes place. Anderson v. State, 8 Okl.Cr. 90, 126 P. 840, Ann.Cas. 1914C, 314, 321; Prescott v. State, 56 Okl.Cr. 259, 37 P.2d 830, 833; In re McKee, 19 Utah 231, 57 P. 23, 27; see, also, In re Krug, C.C., Wash., 79 F. 308, 311; Lamar v. Prosser, 121 Ga. 153, 48 S.E. 977; 16 C.J.S., Constitutional Law, page 1171, sec. 579, note 12.

■ "Due process of law" not only requires that a party shall be properly brought into court, but that he shall have the opportunity when in court to establish any fact which, according to the usages of the common law or the provisions of the constitution, would be a protection to himself or property. Wright v. Cradlebaugh, 3 Nev. 341, 349; Pershing v. Reno Stock Brokerage Co., 30 Nev. 342, 349, 96 P. 1054.

■ At common law, in cases of felony, a defendant could not demand, as a matter of right, compulsory process for his witnesses. Pittman v. State, 51 Fla. 94, 41 So. 385, 8 L.R.A.,N.S., 509, 515; Osborn v. People, 83 Colo. 4, 262 P. 892, 893; United States v. Reid, 12 How. 361, 53 U.S. 361, 13 L.Ed. 1023, 1024; Underhill's Criminal Evidence, 4th ed., page 916, sec. 441, note 6; 70 C.J., Witnesses, page 35, sec. 5, note 28; 14 Am.Jur., Criminal Law, page 881, sec. 163, note 19.

The portion of section 10654, N.C.L., 1929, relied upon by appellant, provides that in a criminal action the defendant is entitled to produce witnesses on his behalf. ■ Certainly this statute does not entitle a defendant to have witnesses brought into court at public expense. Roberts v. State, 94 Ga. 66, 21 S.E. 132, 135; Whittle v. Saluda County, 59 S.C. 554, 38 S.E. 168, 169; Casebeer v. Hudspeth, Warden, 10 Cir., 121 F.2d 914, 916; State v. Waters, 39 Me. 54, 61; Henderson v. Evans, 51 S.C. 331, 29 S.E. 5, 40 L.R.A. 426; State v. Nathaniel, 52 La.Ann. 558, 26 So. 1008, 1010; Greene v. Ballard, 174 Ky. 808, 192 S.W. 841, 843; 14 Am.Jur., Criminal Law, page 882, sec. 166; note, 8 L.R.A.,N.S., 509.

The "Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases," sections 11359 to 11359.06, N.C.L.1931–1941 Supplement, is not cited by appellant.

Although no case directly in point has been found, it is clear that this statute, providing, as it does, that specified sums for fees and mileage shall be paid or tendered to nonresident witnesses summoned to attend and testify in criminal prosecutions in this state, but not providing, either expressly or by implication, that such witnesses summoned on behalf of the defendant shall be brought in without expense to him, does not confer upon the courts of this state authority to procure the attendance and testimony of witnesses from without the state for the defendant in any case at the expense of the public. Greene v. Ballard, supra, 174 Ky. 808, 192 S.W. 841, 843. See, also, authorities supra.

But this matter need not be further discussed, because the trial court actually permitted the defendant to bring four witnesses from California at the expense of Clark County, and denied defendant's motion to bring the two additional witnesses from that state at public expense, only because the testimony of both, as shown by their affidavits upon which the motion was based, was incompetent and immaterial.

Appellant's novel contention, as expressed in his reply

brief, that: "To limit the question strictly to the matters set forth in the affidavits submitted in support of the motion was also improper as no doubt other pertinent evidence could have been elicited from such witnesses at the trial had the accused been allowed to produce them," is neither supported by authority nor based on reason.

■■ Material witnesses from without the state may, under certain conditions, be commanded to attend and testify in criminal prosecutions in the state. Obviously this does not mean that all persons are material witnesses who are so designated by either party, or because they might possibly give pertinent evidence at the trial. Whether the witnesses are material can only be determined by the judge after hearing. At such hearing a showing that the testimony to be given by the witnesses is material must be made. Witnesses whose testimony is shown by their affidavits to be immaterial, as in this case, are not material witnesses, and should not be summoned to attend and testify. Secs. 11359–11359.06, N.C.L. 1931–1941 Supplement. See, also, Palmer v. State, 165 Ala. 129, 51 So. 358, 359; State v. Pope, 78 S.C. 264, 58 S.E. 815, 816; 70 C.J., Witnesses, pages 37, 38, sec. 8, note 69.

Appellant next contends that the court erred in denying his application for change of venue.

The statute under which the application was made reads: "A criminal action prosecuted by indictment or information may be removed from the court in which it is pending, on application of the defendant or state, on the ground that a fair and impartial trial cannot be had in the county where the indictment or information is pending." Sec. 10913, N.C.L.1929.

■ The existence of either of two circumstances should entitle a defendant to a change of venue: (1) The impossibility of obtaining an impartial jury; or (2) Such a state of public excitement against the defendant, that even an impartial jury would be likely to be intimidated and overawed by public demonstrations against the

accused. State v. Millain, 3 Nev. 409, 432; State v. Casey, 34 Nev. 154, 164, 117 P. 5.

■ After considering affidavits and newspaper articles offered in support of the application and oral testimony offered in opposition thereto, the court properly held that the evidence was not sufficient to justify a change of venue because of the existence of any great public excitement against the defendant, and that the impossibility of obtaining a fair and impartial jury could best be determined when the jurors were examined. The application was thereupon denied, "without prejudice on the part of the defendant to renew his motion at a later time."

The method adopted by the court to determine whether or not a fair and impartial jury could be obtained has been approved by this court. State v. Gray, 19 Nev. 212, 215, 8 P. 456; State v. Teeter, 65 Nev. 584, 200 P.2d 657, 671, 690.

The jury, including one alternate juror, were empaneled and sworn after the examination of only thirty-four veniremen, the allowance of only eleven challenges for implied bias, four of which resulted from challenges by the State, and the retention by appellant of two unused peremptory challenges, and without any renewal by appellant of his motion for change of venue. The jurors selected apparently were satisfactory to the appellant, or doubtless he would have renewed the motion. State v. Teeter, supra, 65 Nev. 584, 200 P.2d 657, 671, 689–690.

A mere reading of the decision in State v. Dwyer, 29 Nev. 421, 91 P. 305, the only case relied upon by appellant, is sufficient to show that the facts in that case are so materially different from those in the case at bar that such case has no application whatever.

Moreover, appellant cannot now claim that error was committed by the court in denying his application for change of venue, as all objections to such denial were clearly waived by appellant, by his failure to renew the application after express permission to do so. People v. Fredericks, 106 Cal. 554, 39 P. 944, 945; People v.

Staples, 149 Cal. 405, 86 P. 886, 888; 22 C.J.S., Criminal Law, page 349, sec. 222, notes 79, 80; 7 Cal.Jur., Criminal Law, page 918, sec. 64, note 2.

■ Appellant next contends that the court erred in disallowing challenges for cause to jurors Rodney W. Webb, Lawrence Higbee and Margaret Swift.

The challenges interposed by appellant's counsel were in the following words: As to Rodney W. Webb: "I believe, if your Honor please, just for the purpose of the record, I will challenge Mr. Webb." As to Lawrence Higbee: "I will challenge Mr. Higbee;" "We renew the challenge;" and "At this time I would like to renew the challenge of this juror." As to Margaret Swift: "We will challenge the juror, your Honor;" and "We renew our challenge, I believe the witness is not qualified."

All of these challenges were interposed in general terms. Not one was specific, in that it specified no ground upon which it was based, as expressly required by sec. 10948, N.C.L. 1929. Each was, therefore, insufficient and properly disallowed. State v. Squaires, 2 Nev. 226, 230; State v. Chapman, 6 Nev. 320, 327; State v. Raymond, 11 Nev. 98, 106; State v. Gray, supra, 19 Nev. 212, 218, 8 P. 456; State v. Vaughan, 22 Nev. 285, 296, 39 P. 733; State v. Simas, 25 Nev. 432, 449, 62 P. 242; State v. Salgado, 38 Nev. 64, 70, 145 P. 919, 150 P. 764; State v. Milosovich, 42 Nev. 263, 269, 175 P. 139; State v. Lewis, 50 Nev. 212, 224, 255 P. 1002; State v. Teeter, supra, dissenting opinion, 65 Nev. 584, 200 P.2d 657, 691.

It matters not whether the court disallowed said challenges for the reason that they were insufficient in form, or because each of the jurors to which challenges were interposed was deemed free from objection, as the rulings must be sustained for failure of appellant to specify any ground upon which each challenge was based. State v. Chapman, supra, 6 Nev. 320, 327; State v. Salgado, supra, 38 Nev. 64, 73, 145 P. 919, 150 P. 764.

In no event, however, was appellant injured nor in any position to complain, because, as shown by the record,

the three jurors to which challenges for cause had been previously disallowed, were peremptorily challenged by appellant and excused by the court, and appellant had two peremptory challenges remaining after the jury were empaneled and sworn. Fleeson v. Savage Silver Mining Co., 3 Nev. 157, 162; State v. Raymond, supra, 11 Nev. 98, 108; State v. Hartley, 22 Nev. 342, 357, 40 P. 372, 28 L.R.A. 33; Burch v. Southern Pacific Co., 32 Nev. 75, 104, 104 P. 225, Ann.Cas. 1912B, 1166.

■ Appellant next contends that, because jurors Frank Belding, Vaughan Harris and Mark W. Gamett each stated that he had formed an opinion, the court erred in not excusing them, even though they were not challenged.

The examination of jurors Vaughan Harris and Mark W. Gamett, taken as a whole, discloses that whatever opinion each had was based on newspaper articles and discussions with persons not claiming to know the facts. Each of them stated, in effect, that he would decide the case on the evidence admitted at the trial and the instructions given by the court. Neither of them stated that he had formed or expressed an *unqualified* opinion or belief in regard to the guilt or innocence of the defendant. Had a specific challenge to each been interposed, it should have been disallowed, sec. 10946, N.C.L.1929; State v. Raymond, supra, 11 Nev. 98, 107; State v. Williams, 28 Nev. 395, 407–410, 82 P. 353; State v. Milosovich, supra, 42 Nev. 263, 269–272; 175 P. 139; State v. Lewis, supra, 50 Nev. 212, 225–229, 255 P. 1002; State v. Teeter, supra, dissenting opinion, 65 Nev. 584, 200 P.2d 657, 691, 692; State v. Varga, 66 Nev. 102, 205 P.2d 803, 811.

As to juror Frank Belding, it is not necessary to determine whether a specific challenge, if made, should have been allowed. Even if one had been made and erroneously disallowed, appellant could not have been prejudiced thereby, because, at the time of the completion and acceptance of the jury, he had not exhausted his peremptory challenges. State v. Fondren, 24 Idaho

663, 135 P. 265, 266; Bryant v. State, 7 Wyo. 311, 51 P. 879, 880, 56 P. 596; People v. Winthrop, 118 Cal. 85, 50 P. 390, 391; 8 Cal.Jur., Criminal Law, page 609, sec. 595, notes 6–9; 24 C.J.S., Criminal Law, pages 888, 889, sec. 1900, notes 79–81.

By his own act in not setting aside any of the jurors when he had the power to do so, it is rendered clear that he had a jury satisfactory to himself. Fleeson v. Savage Silver Mining Co., supra, 3 Nev. 157, 164.

■ Appellant next contends that the court erred in unduly limiting appellant's counsel in questioning Lawrence Higbee and other jurors.

The record discloses that appellant's counsel was expressly permitted to examine Lawrence Higbee at great length, after a challenge made by him had been traversed and disallowed; after the court had asked him if he then desired to ask any more questions, and he had declined; and after the prospective juror had been examined by the prosecution and passed for cause. It also discloses that appellant was not limited in his direct examination of any other juror.

However, in permitting appellant's counsel to again examine Lawrence Higbee, after the prosecution had examined and passed said juror for cause, the court advised him, in effect, that he would not be permitted to so proceed with any more jurors, but that he must exhaust all his challenges for cause to a juror before the prosecution began its examination of that juror; and further stated, in effect, that said warning was inserted in the record, so that appellant's rights would not be prejudiced in any way. The court then read the statute: "All challenges to an individual juror, except peremptory, must be taken, first by the defendant, and then by the state, and each party must exhaust all his challenges before the other begins." Sec. 10954, N.C.L.1929.

Similar rulings have been repeatedly sustained by the courts of California, the state from which our statute was adopted. People v. Stonecifer, 6 Cal. 405, 409; People v. Collins, 105 Cal. 504, 39 P. 16, 18; People v.

Lesse, 52 Cal.App. 280, 199 P. 46, 48; People v. Spraic, 87 Cal.App. 724, 262 P. 795, 797.

■ Moreover, where no prejudice results, error in limiting the examination of prospective jurors is not ground for reversal. People v. Coen, 205 Cal. 596, 271 P. 1074, 1077; People v. Jefferson, 84 Cal.App.2d 709, 191 P.2d 487, 489; State v. Lippard, 223 N.C. 167, 25 S.E.2d 594, 597, certiorari denied 320 U.S. 749, 64 S.Ct. 52, 88 L.Ed., 445; State v. Grambo, 82 Ohio App. 473, 75 N.E.2d 826, 827; 24 C.J.S., Criminal Law, page 886, sec. 1900, note 56.

Except for some general statements not supported by the record, appellant has wholly failed to show how or in what manner he was prejudiced by said rulings. The record discloses that out of twenty-seven persons subsequently examined for regular jurors, seventeen were passed for cause and ten were challenged by appellant; that nine of said challenges were allowed by the court and the prospective jurors excused; and that only one of said challenges was disallowed by the court, whereupon appellant's counsel was expressly asked if he had any other challenges and if he wished to examine further on the other grounds, to which he replied: "No, I don't think so." Later this juror was peremptorily challenged by appellant and excused. It nowhere appears that appellant's counsel ever requested that he be permitted to further examine any juror·after concluding his direct examination. Thus, it is clear that appellant was not prejudiced by said rulings.

Appellant next contends that the court erred in admitting in evidence certain things marked as exhibits, namely, a watch, a bank bag, a bag, two pieces of bloodstained matting, and a small piece of bone.

■ The watch was identified by the father of deceased, as one which' had belonged to the deceased; by a Las Vegas jeweler as one which he had previously repaired for the deceased; and by a Las Vegas motel operator as one which was pawned to him by the appellant on the day following the homicide. The appellant

admitted having had possession of the watch and of "hocking" it to the motel operator.

■ The bank bag was identified by the manager of the service station where deceased was employed, as the bag in use for the handling of moneys received at said station, and by Roy Foster, who testified that he found it approximately a week after the finding of deceased's body, about two and one-half feet off the highway between the said service station and the location where the body of deceased was found. Appellant testified that the money he took from deceased was contained in a bag, which he threw away.

■ The other bag was identified by the operator of the motel as having been found by her the morning following appellant's arrest, under one of the beds in the motel room occupied by appellant the previous night. At the time of its discovery, it contained the gun admitted in evidence and some miscellaneous articles not admitted. Appellant's testimony showed that the deceased was killed with the gun found in the bag.

■ The two pieces of blood-stained matting and the small piece of bone were identified by a deputy sheriff as having been taken from appellant's car shortly after his arrest, and the F.B.I. technician testified that the stains on the matting and on the bone were made by human blood. The physician who examined the body of deceased testified that deceased's skull was shattered by the bullet, and that a small piece of the skull was missing. Appellant's testimony showed that the car from which the matting and the bone were taken was the car used by him at the time of the killing.

Aside from the bag found under the bed, all of these exhibits were clearly admissible; and the admission of the bag, even if erroneous, could not have resulted in any possible prejudice to appellant. State v. Gee Jon, 46 Nev. 418, 429, 430, 211 P. 676, 217 P. 587, 30 A.L.R. 1443.

Appellant next contends that the court erred in refusing to instruct the jury to acquit the defendant.

This assignment is so devoid of merit that it requires no consideration.

■ Appellant next contends that the court erred in refusing to declare a mistrial.

This contention is predicated upon the denial of appellant's motion to declare a mistrial, made after the completion of his cross-examination, because of a question asked appellant during said cross-examination and his answer thereto, as follows:

"Q. You had been writing bad checks, too, hadn't you?

"A. Yes, I did."

As no objection was made to the admission of this evidence, its admissibility will not now be considered. State v. Lawrence, 28 Nev. 440, 449, 82 P. 614; State v. Mangana, 33 Nev. 511, 522, 112 P. 693; State v. Clarke, 48 Nev. 134, 140, 228 P. 582, 583; State v. Jukich, 49 Nev. 217, 236, 242 P. 590.

■ Appellant next contends that the court erred in not instructing the jury, of its own motion, to disregard the testimony of other crimes.

The testimony to which this assignment has reference, is the one question asked appellant by the prosecution about writing bad checks, which was asked and answered without objection, after appellant had introduced an exhibit in which the facts regarding such checks were fully covered; and to the voluntary statement by one of the witnesses, who, in referring to what appellant had told him about bringing the girl from and returning her to San Bernardino, and claiming not to know her name or what she looked like, added "in spite of the fact that he slept with her." Upon objection, and request that the witness be instructed to offer no comments of that kind, the court immediately admonished the witness to be careful of his remarks, and not to volunteer what he didn't know, to which the witness replied: "That is unfounded and I am sorry."

The evidence shows that appellant, in company with the girl, referred to in the testimony, whom he met in a

barroom in San Bernardino, on August 17, 1948, registered at a motel in Boulder City, on August 19, the day of the murder, and in Las Vegas, on August 20, the day before he returned to San Bernardino with the girl, where he left her. How appellant can now complain of the testimony to which he refers is not plain.

Besides, appellant did not request that the jury be instructed to disregard the testimony of other crimes. If, in fact he believed that the jury should have been so instructed, it was his right and his duty to have prepared such an instruction and asked the court to give it. State v. Smith, 10 Nev. 106, 122; State v. Simas, supra, 25 Nev. 432, 447, 62 P. 242; State v. Thompson, dissenting opinion, 31 Nev. 209, 225–226, 101 P. 557; State v. Acosta, 49 Nev. 184, 192, 242 P. 316.

██ Not having done so, appellant is in no position to complain, for it is well settled that the omission of the court to instruct the jury of its own motion, upon any given point is not error. State v. McLane, 15 Nev. 345, 367; State v. Hing, 16 Nev. 307, 311; State v. Thompson, supra, dissenting opinion, 31 Nev. 209, 225–226, 101 P. 557; see, also, State v. Mangana, supra, 33 Nev. 511, 522, 112 P. 693.

Appellant next contends that the court erred in giving instructions 16, 18, 20, 21, and 24.

Instruction No. 16 reads as follows:

"A murder is committed in the perpetration of robbery when it is committed by the accused while he is engaged in any act required for the full execution of the robbery. To constitute a murder during the commission of robbery, the murder may occur either before or after the money or other loot is actually taken from the possession or presence of the victim, but it must occur during the time the robbery is being executed.

"The duration of the execution of the robbery is not necessarily confined to a fixed moment or a particular place, but may extend over a considerable time or a wide area. The robbery begins the moment the robber by

force or violence, or threat of force or violence, places the victim under his fearful domination in an effort to obtain the money or property of the victim. It continues all during the actual taking of the loot by the robber. Furthermore, the robbery continues so long as the victim is subjected to the force or violence or threat of force or violence originally applied."

To ascertain whether this instruction correctly states the law, or, if not, whether it was prejudicial to appellant, it is necessary to determine whether the murder was committed in the perpetration of a robbery.

Appellant testified that on August 19, 1948, he held up Donald Brown, a service station attendant, as the latter was closing the station for the night, at the point of a gun which he had taken from the residence of an acquaintance in California; that he does not know how much money he took from the attendant; that he imagines it was around $50 or $60; that he does not believe he took the money from the attendant right then; that he compelled the attendant to accompany him in his automobile; that he believes the attendant carried the bag of money in the car himself; that he drove for some time, up and down the highway, looking for a lonesome spot to leave the attendant; that he judges that he drove around with the attendant for at least a half hour—he does not know; that they reached a point, a sufficient distance in his opinion to compel the attendant to walk back, and thus enable him to leave town without being apprehended, when he stopped the automobile for the purpose of letting out the attendant; that the gun was then lying on the seat between or was in his right hand, or his hand was over it; that he believes the attendant either tried to grab the gun from him or to overpower him; that the gun was in his hand and that he "accidentally, either in the tension or the excitement, pulled the trigger"; that he did not intend to kill the attendant; that he dragged the body some distance from the side of the road, and left it and drove away; that he does

not remember taking the attendant's watch from him; that it might have been during transit; that he remembers hocking this watch the following day; that he does not remember when he took the money out of the bag, whether before or after he shot the attendant; that he believes he remembers throwing the bag away.

By other evidence, it was established that the personal property taken from the service station, consisted of $91.35, and a bag regularly used in which to place the money in the cash box when closing the station for the night; that the body of the attendant was discovered on the morning of August 22, 1948, almost wholly concealed behind some brush, forty-six feet to the right of the pavement on the Boulder City-Las Vegas highway, approximately four miles from the scene of the holdup; that the deceased had been shot in the head, the bullet having made its entry two inches to the rear of the corner of the right eye and its exit about one inch to the rear of the lobe of the left ear; that death was caused by the bullet wound; that no gun was found in the vicinity of the body; that the deceased's wallet, containing three one dollar bills, was found eighteen feet distant from the body, between the body and the highway.

Robbery is defined by statute as follows: "Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery." Sec. 10109, N.C.L.1929.

So far as applicable to this case, our statute provides: "All murder * * * which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, * * * shall be deemed murder of the first degree." Sec. 10068, N.C.L.1943-1949 Supplement.

When a killing is done in the perpetration or attempt to perpetrate robbery, or any other of the enumerated felonies, it is not essential for the state to

prove that it was willful, deliberate, and premeditated. State v. Sala, 63 Nev. 270, 284, 169 P.2d 524.

Appellant, acting under the assumption that he secured possession of the money at the service station, at least thirty minutes before he killed the attendant at a distant point, argues that the killing was committed *after* the robbery and not in its perpetration.

██ If, in fact, *possession* of the money was obtained by appellant at the service station, when he held up the attendant at the point of a gun, appellant then committed the crime of robbery so far as to render himself liable to punishment for it. State v. Brown, 7 Or. 186, 209; State v. Turco, 99 N.J.L. 96, 122 A. 844, 846; State v. Messino, 325 Mo. 743, 30 S.W.2d 750, 759.

But the robbery in contemplation of law was not completed so far as the subsequent killing was concerned until appellant had secured *complete control* of the property taken from the victim. State v. Brown, supra, 7 Or. 186, 209; State v. Turco, supra, 99 N.J.L. 96, 122 A. 844, 845–847; State v. Messino, supra, 325 Mo. 743, 30 S.W.2d 750, 759.

██ Robbery, unlike burglary, is not confined to a fixed locus, but is frequently spread over considerable distance and varying periods of time. People v. Boss, 210 Cal. 245, 290 P. 881, 883; People v. Raucho, 8 Cal.App.2d 655, 47 P.2d 1108, 1112; People v. Kristy, 4 Cal.2d 504, 50 P.2d 798, 800, certiorari denied 297 U.S. 712, 56 S.Ct. 593, 80 L.Ed. 998; People v. Nixon, 33 Cal.2d 688, 203 P.2d 748, 751.

██ Robbery, a combination of the crime of assault with that of larceny, includes, as does larceny, the element of asportation, and this taking away is a transaction which continues as the perpetrator departs from the place where the property was seized. People v. Raucho, supra, 8 Cal.App.2d 655, 47 P.2d 1108, 1112; People v. Melendrez, 25 Cal.App.2d 490, 77 P.2d 870, 872; People v. Wallace, 36 Cal.App.2d 1, 97 P.2d 256, 258.

██ The "perpetration" of the crime of robbery is

not completed the moment the stolen property is in the possession of the robber. People v. Wallace, supra, 36 Cal.App.2d 1, 97 P.2d 256, 257; People v. Perhab, 92 Cal.App.2d 430, 206 P.2d 1133, 1135, 1137; People v. Melendrez, supra, 25 Cal.App.2d 490, 77 P.2d 870, 872; People v. Raucho, supra, 8 Cal.App.2d 655, 47 P.2d 1108, 1112.

The escape of the robber with his ill-gotten gains by means of arms is as important to the execution of the robbery as gaining possession of the property. People v. Wallace, supra, 36 Cal.App.2d 1, 97 P.2d 256, 257; People v. Perhab, supra, 92 Cal.App.2d 430, 206 P.2d 1133, 1135, 1137; People v. Melendrez, supra, 25 Cal. App.2d 490, 77 P.2d 870, 872. People v. Nixon, supra, 33 Cal.2d 688, 203 P.2d 748, 751. See, also, People v. Boss, supra, 210 Cal. 245, 290 P. 881, 883.

■ Acts of taking victim of robbery from scene of crime in automobile for purpose of removing him to a place where he could less easily raise an alarm and summon aid, are committed in the perpetration of the robbery. People v. Raucho, supra, 8 Cal.App.2d 655, 47 P.2d 1108, 1112; People v. Kristy, supra, 4 Cal.2d 504, 50 P.2d 798–800, certiorari denied 297 U.S. 712, 56 S.Ct. 593, 80 L.Ed. 998; People v. Bean, 88 Cal.App.2d 34, 198 P.2d 379, 382–383. See, also, State v. Williams, 28 Nev. 395, 407, 82 P. 353.

In State v. Williams, supra, the homicide occurred at least two minutes after the robbery at another place approximately two miles distant. 28 Nev. 395, 396, 82 P. 353. In holding that the homicide was committed in the perpetration of the robbery, this court said:

"It occurred as part of a continuous assault, lasting from the robbery to the shooting, and apparently was done for the purpose of preventing detection. The court properly instructed the jury that under the statute all murder committed in the perpetration of robbery is of the first degree."

■ When the homicide is within the res gestae of the initial crime, and is an emanation thereof, it is committed in the perpetration of that crime in the statutory

sense. State v. Adams, 339 Mo. 926, 98 S.W.2d 632, 108 A.L.R. 838, 844; MacAvoy v. State, 144 Neb. 827, 15 N.W.2d 45, 48, certiorari denied 323 U.S. 804, 65 S.Ct. 559, 89 L.Ed. 642; 40 C.J.S., Homicide, page 870, sec. 21, note 70.

■ The res gestae embraces not only the actual facts of the transaction and the circumstances surrounding it, but the matters immediately antecedent to and having a direct causal connection with it, as well as acts immediately following it and so closely connected with it as to form in reality a part of the occurrence. People v. Bush, 56 Cal.App.2d 877, 133 P.2d 870, 873; 8 Cal.Jur., Criminal Law, pages 96–97, sec. 193, notes 2–5.

■ In this case, the murder was clearly within the res gestae of the robbery, because it was so connected and associated with the robbery as to virtually and effectively become a part of it. Under no possible theory can it be properly said that the murder was committed as an independent act disassociated from the robbery. It is certain, therefore, that the murder was committed in the perpetration of the robbery, within the true intent and fair meaning of the statute, even though we assume that the bag of money was the only personal property taken in the robbery and that appellant secured possession of it at the service station. But it is not necessary that we so assume, because appellant's own testimony shows that appellant probably did not secure possession, and that he certainly did not secure control, of the money, until *after* he killed the attendant. Furthermore, appellant does not even claim that he acquired control or secured possession of the attendant's watch, admittedly a part of the personal property taken in the robbery, *before* he killed the attendant.

■ It makes no difference in this case whether appellant unintentionally killed the deceased, as he claims, or whether the killing of deceased by appellant was intentional, as the jury might well have found, because one who kills another in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, is guilty of murder in the first degree by force of the statute

(Sec. 10068, N.C.L.1943–1949 Supplement), regardless of any question whether the killing was intentional or unintentional. State v. Gray, supra, 19 Nev. 212, 219–220, 8 P. 456; People v. Denman, 179 Cal. 497, 177 P. 461; People v. Sameniego, 118 Cal.App. 165, 4 P.2d 809, 811, 5 P.2d 653; Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595, 610; Rhea v. State, 63 Neb. 461, 480, 88 N.W. 789, 793–795; 40 C.J.S., Homicide, pages 868–869, sec. 21a, note 60.

■ Thus, it is seen that instruction 16, although not technically correct in all particulars, and not approved in its entirety as a matter of law, was more favorable to appellant than justified by law and not prejudicial to him.

■ Instructions 18, 20, 21 and 24, the giving of which were assigned as error, are not discussed by appellant. Instead, he discusses instructions 9, 11, 17B(2), 26a and 31, the giving of which were not assigned as error. Besides, the record discloses that the only objection made in the trial court to the giving of any instruction was to instruction 24, which objection was upon the ground only that instruction 24 was covered by other instructions—that instruction 23 covered the law of the case. As that objection is wholly without merit, and as the record also discloses that in reply to a question by the court, "Do counsel have any objections to any of the instructions?" appellant's counsel answered "No," further comment is unnecessary.

Appellant next contends that the court erred in admitting in evidence two written confessions obtained the day of his arrest by investigating officers, because:

1. There was no independent evidence of the corpus delicti;

2. The confessions were not voluntary;

3. The witnesses, whose testimony as to the voluntariness of the confessions was heard by the court in the absence of the jury, were not re-examined in the presence of the jury;

4. The confessions were obtained before appellant was taken before a committing magistrate; and

5.   Appellant's rights under the fourteenth amendment were violated.

■■■   As to the first ground, the term corpus delicti, as applied to homicide cases, involves two elements: first, the fact of death; and, second, the criminal agency of another person as to the cause of death. State v. Crank, 105 Utah 332, 142 P.2d 178, 170 A.L.R. 542, 549; State v. Jeannet, 183 Or. 354, 192 P.2d 983, 984; 41 C.J.S., Homicide, page 5, sec. 312, notes 1–2; Underhill's Criminal Evidence, 4th ed., sec. 35, note 5.

By the great weight of authority, the criminal agency of the accused, or, as sometimes stated, the identity of the perpetrator of the homicide, is not an element of the corpus delicti, notwithstanding a contrary statement in Wharton's Criminal Evidence, quoted with approval in State v. Teeter, 65 Nev. 584, 200 P.2d 657, 674. Ausmus v. People, 47 Colo. 167, 107 P. 204, 19 Ann.Cas. 491, 494; Lowe v. People, 76 Colo. 603, 234 P. 169, 173; Antone v. State, 49 Ariz. 168, 65 P.2d 646, 651; People v. Meyers, 7 Cal.App.2d 351, 46 P.2d 282, 283–284; People v. Leary, 28 Cal. 740, 172 P.2d 41, 44; State v. Willson, 116 Or. 615, 241 P. 843, 845–846; State v. Henderson, 182 Or. 147, 184 P.2d 392, 411, 186 P.2d 519; People v. Manske, 399 Ill. 176, 77 N.E.2d 164, 168; State v. Fitzsimmons, 338 Mo. 230, 89 S.W.2d 670, 673; Bickett v. Commonwealth, 294 Ky. 671, 172 S.W.2d 439, 440; Murray v. United States, 53 App.D.C. 119, 288 F. 1008, 1015–1016, certiorari denied 262 U.S. 757, 43 S.Ct. 703, 67 L.Ed. 1218; Underhill's Criminal Evidence, 4th ed., sec. 545, note 2; sec. 35, note 6; Nichols Applied Evidence, Murder, vol. 4, pages 3282–3283, sec. 364, notes 12–14; 26 Am.Jur., Homicide, page 475, sec. 461, notes 18–19, 1–4; 41 C.J.S., Homicide, page 6, sec. 312, notes 3–5; Wigmore on Evidence, 3d ed., vol. 7, page 402, sec. 2072, note 4.

As said in Wigmore on Evidence, supra: "A third view, indeed, too absurd to be argued with, has occasionally been advanced, at least by counsel, namely, that the 'corpus delicti' includes the third element also, i. e. the *accused's identity* or agency as the criminal. By this view, the terms 'corpus delicti' would be synonymous

with the whole of the charge, and the rule would require that the whole be evidenced in all three elements independently of the confession, which would be absurd."

■ The evidence, in addition to that briefly stated in discussing the preceding assignment of error, shows that there were two furrows, approximately two inches wide and one-half inch deep, extending from the highway to the victim's body, between which furrows there were three large blood spots, one situate five feet from the edge of the highway, the second two feet four inches distant from the first, and the third twenty-one feet distant from the second and eighteen feet distant from the victim's chest.

Although no witness so testified, it is certain that the furrows could only have been made by the victim's heels, as his body was being dragged from the highway to the place of concealment, and that the blood spots could only have been made when the perpetrator of the crime placed the body on the ground while resting enroute.

Such evidence, entirely independent of the confessions and of appellant's oral testimony, clearly established the fact of death and that such death resulted, not from accident or suicide, but from the criminal agency of another person. Thus, both elements of the corpus delicti were proved—not beyond a reasonable doubt, but beyond all possible doubt.

■ As to the second ground, the record shows that the court, in the absence of the jury at the request of appellant's counsel, heard the testimony of appellant that, before confessing, he was furnished inducements, threatened with injury, and given promises, and the contradictory testimony of the other witnesses present when the confessions were made, and ruled that the confessions were voluntarily given. In doing so, it said: "The Court concludes from the evidence that there were no promises, inducements, or other circumstances which would show that the confessions were involuntary."

After the jury were recalled, the confessions were

admitted in evidence, and, without objection on the part of appellant's counsel but with his express consent, entered in the record, the testimony taken in the absence of the jury, to determine the admissibility of the confessions, was read to the jury; and the court submitted the issue of voluntariness to the jury by instruction 26a, which read: "You are instructed that, before you can consider any alleged confession of the Defendant as evidence against him you must believe that such alleged confession was freely and voluntarily made, and was not the result of inducement, coercion, intimidation, threats, violence, promises or duress exercised by any officer of the law, or any other person, upon the defendant. Unless you believe that such alleged confession was freely and voluntarily made by the Defendant, with knowledge of its meaning, then you must disregard such confession entirely from your consideration."

Whether the voluntariness of the confessions admitted in evidence in this case by the court is a question that should have been submitted to the jury for determination, is not before us and cannot be decided. That question is one about which the courts have not been able to agree. State v. Compo, 108 N.J.L. 499, 158 A. 541, 85 A.L.R. 866, and note; State v. Crank, 105 Utah 332, 142 P.2d 178, 170 A.L.R. 542, and note. Although discussed in State v. Williams, 31 Nev. 360, 102 P. 974, 979, the question was not raised in that case, and the conclusion there reached, aside from being obiter dictum, is too uncertain to be understood. See notes 85 A.L.R. 871 and 904. In no event, however, is appellant in any position to complain, because, as said in the Williams case:

"If the defendant's contention that it is the duty of the court to determine whether the confession was voluntary be conceded, and the court found that there was evidence to indicate that it was voluntary, although the testimony was conflicting, and thereupon allowed proof

of the confession to go to the jury, the submission to the jury of the conflicting evidence as to whether the confession was voluntary would be beneficial rather than prejudicial to the defendant, and consequently no ground for reversal."

■ Moreover, even if the court erred in admitting in evidence the written confessions, appellant was not prejudiced thereby, for the reason that he became a witness in his own behalf, and testified substantially in accordance with his confessions. State v. Johnny, 29 Nev. 203, 219, 87 P. 3; State v. Williams, supra, 31 Nev. 360, 367, 102 P. 974; State v. Urie, 35 Nev. 268, 274, 129 P. 305; State v. Williams, 67 Nev. 373, 219 P.2d 184, 189.

■ As to the third ground, the record shows that the procedure adopted by the court with reference to the matter was not only consented to by appellant's counsel, but was in part suggested by him, and that, without objection, and without request that any witness be again examined, he actually assisted in reading to the jury the testimony as to the voluntariness of the confessions, which, at his request, had been taken before the court in the absence of the jury. Nothing more need be said.

■ As to the fourth ground, the so-called "civilized standards" rule for the guidance of federal law enforcement officers and lower federal courts, which precludes the admission in evidence of a confession when obtained before the defendant was taken before a magistrate, pronounced in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, the case so strongly relied upon by appellant, and later followed by the same court in subsequent decisions, is not binding on this court, which, following the majority rule in the state courts, has properly held that a voluntary confession is not rendered inadmissible because obtained after defendant was taken into custody and prior to the time he was taken before a magistrate. State v. Boudreau, 67 Nev. 36, 214 P.2d 135, 139–142; State v. Williams, 67 Nev. 373, 219 P.2d 184, 189, 190.

As to the fifth ground, appellant neither argues the matter nor cites any authorities. We quote from the annotation in 93 L.Ed. 117:

"Although the Fourteenth Amendment leaves a state free to adopt by statute or decision such tests of the voluntariness of a confession of guilt as it may elect, whether or not they conform to those applied in the Federal or in other state courts, and although, on a review of state convictions, all those matters which are usually termed issues of fact are for conclusive determination by a state court and not open for reconsideration by the Supreme Court of the United States, the court is not precluded by the verdict of a jury, or by the finding of a court, or both, from drawing a conclusion from *uncontroverted happenings* and determining whether the circumstances under which the confession was made were such that its admission in evidence amounts to denial of due process.

"*Where the evidence as to the method employed to obtain the confession is conflicting, the Supreme Court will accept the determination of the triers of fact as to its voluntary character,* unless such determination is so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process." (Italics supplied.)

As previously shown, both the court and the jury found that the confessions were freely and voluntarily made. We have carefully read all of the testimony upon which such findings were based, and upon which appellant claims that the confessions were obtained by inducements, threats and promises. Although conflicting, in that appellant's version differs from that of the other witnesses, the testimony clearly shows that, preliminarily to their introduction in evidence, the confessions were made freely and voluntarily, not the "result of torture, physical or psychological," and without inducements, threats, or the use of coercion or intimidation, and without promise of reward or immunity from punishment, or other promises.

■ Appellant next contends that the court committed prejudicial error in allowing Dr. Otto L. Gericke, superintendent and medical director of the Patton State Hospital, to testify against appellant as to treatment of and statements made by appellant, which statements were not only privileged communications between physician and patient but violated appellant's constitutional right of immunity from self-incrimination.

As no objections on these grounds were made to the questions which elicited the evidence now claimed to have been improper and prejudicial, its admissibility will not be considered. State v. Lawrence, supra, 28 Nev. 440, 449, 82 P. 614; State v. Mangana, supra, 33 Nev. 511, 522, 112 P. 693; State v. Clarke, supra, 48 Nev. 134, 140, 228 P. 582, 583; State v. Jukich, supra, 49 Nev. 217, 236, 242 P. 590.

Appellant next contends that the court committed prejudicial error in allowing Dr. Philip Work to testify as to statements made by appellant to him.

In effect, appellant's objections are: (1) that the testimony was privileged, in that the relation of physician and patient existed; (2) that it constituted a violation of appellant's constitutional right not to be a witness against himself; (3) that it violated the rule of the veterans' administration that no information can be taken from a defendant without his written consent; and (4) that it is improper rebuttal testimony.

As to the first objection, appellant relies upon that portion of the statute which reads: "A licensed physician or surgeon shall not, without the consent of his patient, be examined as a witness as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient;" Sec. 8974, N.C.L., as amended, Stats.1949, 525, 1943–1949, N.C.L. Supplement.

■ There are several reasons why this statute has no application whatever to this case, among which are the following: (a) Dr. Work was not a "licensed physician or surgeon."

The words, "licensed physician or surgeon," found in

this section, were clearly intended to apply to a person not prohibited by the statute "regulating the practice of medicine, surgery and obstetrics in the State of Nevada," secs. 4090–4107, N.C.L. from practicing, because it is only such a person who can legally "prescribe or act for the patient." See State ex rel. Weyerhorst v. Lee, 28 Nev. 380, 393, 82 P. 229; Wiel v. Cowles, 45 Hun, N.Y. 307, 308; Brown v. Elwell, 60 N.Y. 249, 251; Commonwealth v. Cohen, 142 Pa.Super. 199, 15 A.2d 730, 732.

■ As Dr. Work was admittedly not a "licensed physician or surgeon" in this state when he examined appellant and received the information about which he later testified, such information was not privileged. Wiel v. Cowles, supra, 45 Hun, N.Y. 307, 308; Chamberlayne Trial Evidence, 2d ed., sec. 284, pages 257–258, note 41; 70 C.J., Witnesses, page 443, sec. 592, note 17.

(b) The relation of physician and patient did not exist.

■ In order for a physician to be incompetent under this statute, the relation of physician and patient must have existed between him and the person as to whose statements, symptoms, or conditions he is called to testify, at the time when he acquired the information which he is requested to disclose. 70 C.J., Witnesses, page 440, sec. 590, note 88.

■ No such relation existed in this case, because Dr. Work was sent by the district attorney solely for the purpose of examining appellant in order to report upon his sanity. People v. Sliney, 137 N.Y. 570, 33 N.E. 150, 154, 10 N.Y.Cr.R. 303; 70 C.J., Witnesses, page 441, sec. 590, note 91. See, also, Simecek v. State, 243 Wis. 439, 10 N.W.2d 161, 165.

(c) The information was not acquired, in attending a patient, which was necessary to enable the physician to prescribe or act for the patient.

■ The prohibition against a physician testifying exists only as to information acquired, in attending the patient, which was necessary to enable the physician to prescribe or act for the patient. Skidmore v. State, 59 Nev. 320, 327, 92 P.2d 979.

No professional relation precluding a disclosure of

information arises where a physician employed for that purpose alone makes an examination of a person charged with crime, in order to pass on his sanity, as in this case, and not for diagnosis and treatment. Skidmore v. State, supra, 59 Nev. 320, 327–328, 92 P.2d 979; 58 Am.Jur., Witnesses, page 239, sec. 418; 70 C.J., Witnesses, page 441, sec. 590, note 91.

■ As to the second objection, it has already been shown that the relation of physician and patient, as contemplated by the statute, did not exist, for which reason it is clear that appellant was not compelled to furnish evidence against himself by the testimony of Dr. Work. People v. Austin, 199 N.Y. 446, 93 N.E. 57, 59.

And where, as in this case, insanity is interposed as a defense, an examination of accused by an expert medical witness, for the purpose of determining his mental condition, consented to by the accused, and the admission in evidence of the expert's findings with respect thereto, does not violate the constitutional privilege of accused not to be a witness against himself. State v. Petty, 32 Nev. 384, 387–391, 108 P. 934, Ann.Cas. 1912D, 223; People v. Krauser, 315 Ill. 485, 146 N.E. 593, 598–601; State v. Nelson, 162 Or. 430, 92 P.2d 182, 189; 22 C.J.S., Criminal Law, page 998, sec. 651, notes 26–28.

■ The third and fourth objections are not even mentioned in appellant's briefs, for which reason it must be assumed that no reliance is placed upon them and that they are waived. State v. Urie, supra, 35 Nev. 268, 275, 129 P. 305.

■ Appellant next contends that the court committed prejudicial error in allowing the jury to separate.

The statute governing the matter reads: ."The jurors sworn to try a criminal action may, at any time before the submission of the case to the jury, in the discretion of the court, be permitted to separate or be kept in charge of a proper officer." Sec. 10990, N.C.L.1929.

Under this statute, the jury are permitted to separate at adjournments and recesses until the case is submitted

to them for decision, unless the court, in its discretion, orders them kept together in charge of an officer during the progress of the trial. People v. Witt, 170 Cal. 104, 148 P. 928, 930; People v. Ebanks, 117 Cal. 652, 49 P. 1049, 40 L.R.A. 269, 275; People v. Erno, 195 Cal. 272, 232 P. 710, 715; State v. Williams, 166 S.C. 63, 164 S.E. 415, 421; Horn v. State, 13 Okl.Cr. 354, 164 P. 683, 685; 8 Cal.Jur., Criminal Law, page 383, sec. 414, notes 4–6.

■■ However, it is not necessary to rely upon the statute, because it is admitted in this case that appellant's counsel actually consented to the separation of the jury, thus waiving all objections, if any he had. State v. McMahon, 17 Nev. 365, 369–373, 30 P. 1000.

Appellant next contends that the court erred in denying his motion for a new trial, because;

1. Of error in failing to instruct as to other crimes;

2. Of error in deciding questions of law arising during the trial;

3. Of misconduct on part of jury in reaching a verdict in fifteen minutes;

4. The verdict is contrary to the law and to the evidence;

5. The evidence was insufficient to justify the jury in finding appellant guilty of murder in the first degree; and

6. Of newly discovered evidence.

The first, second, fourth and fifth grounds have already been fully considered and found to be without merit. That conclusion has not been changed by a careful consideration of appellant's argument on his motion for new trial.

51. As to the third ground, it is admitted that the jury received the case at 12: 30 p. m., and rendered the verdict at 2: 25 p. m., on the same day, during which period the jury were taken out to lunch. So far as one can tell from the record, the jury may have considered the evidence during the lunch period and may have

deliberated upon it in the jury room, before going to and after returning from lunch, for more than fifteen minutes. But, assuming that the consideration and deliberation after submission consumed *only* fifteen minutes, that does not even indicate misconduct on the part of the jury in rendering the verdict, or error of the court in receiving it.

■ In view of the evidence presented, which clearly established the guilt of appellant beyond all possible doubt, and fully justified the punishment fixed, the jury were only reasonably expeditious in rendering the verdict. Commonwealth v. Clark, 292 Mass. 409, 198 N.E. 641, 646; Smith v. State, 40 Tex.Cr. 391, 50 S.W. 938, 939; State v. Chandler, 126 S.C. 149, 119 S.E. 774, 776.

■ As to the sixth ground, the evidence claimed to be newly discovered relates simply to the mental and physical condition of appellant long prior to the murder. If at all material, it could only be cumulative, and was in fact known to appellant and his counsel before the trial. The refusal of the court to grant a new trial upon the ground that such evidence was newly discovered was clearly right. State v. Randolph, 49 Nev. 241, 248, 242 P. 697.

Before concluding this opinion, it is proper to state that L. O. Hawkins, one of appellant's counsel in this court, did not represent, nor assist in representing, appellant in the trial court.

A most careful consideration of the entire record fails to disclose any prejudicial error, for which reason the judgment and the order appealed from are affirmed, and the district court is directed to make the proper order for the carrying into effect by the warden of the state prison of said judgment.

HORSEY, C. J., and BADT, J., concur.

EATHER, J., being ill and unable to participate in this opinion, the Governor designated Hon. WM. McKNIGHT, Judge of the Second Judicial District Court, to sit in his place.

ON PETITION FOR REHEARING

November 16, 1950.

*Per Curiam:*

**Rehearing denied.**