IN THE MATTER OF THE APPLICATION OF ROBERT KENNETH ERVIN FOR WRIT OF HABEAS CORPUS.

ROBERT KENNETH ERVIN, APPELLANT *v.* W. E. LEYPOLDT, SHERIFF OF CLARK COUNTY, RESPONDENT.

No. 4290

June 2, 1960                    352 P.2d 718

*Dickerson and Miles,* of Las Vegas, for Appellant.

*Roger D. Foley,* Attorney General; *George Foley,* District Attorney, Clark County, and *Thomas J. O'Donnell,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MCNAMEE, C. J.:

This appeal is from an order denying a writ of habeas corpus.

A complaint was filed in the justice's court of Las Vegas township, Clark County, Nevada, charging appellant with the murder on July 6, 1959, of Dolores Ann Stafford, a female child of the age of six years. After a preliminary hearing before the justice of the peace appellant was bound over for trial in the district court.

The only question before us on this appeal is whether or not sufficient evidence was presented at the preliminary hearing to justify the justice of the peace in holding the appellant to answer for the crime charged in the complaint.

Juanita Stafford testified that her daughter, Dolores Ann Stafford left her home at about 2:45 P. M. on July 6, 1959 and she did not again see her daughter alive. Shortly thereafter, appellant upon leaving his apartment walked by Mrs. Stafford without saying a word. On July 7 the body of Dolores Ann Stafford was found in the attic of appellant's locked apartment where at the time he was living alone and which was in close proximity to the Stafford home.

Evidence was introduced to show that appellant left Las Vegas, Nevada, for Los Angeles, California, by train at 4:45 P. M. on July 6, 1959 and arrived in Los

Angeles at midnight the same day. Thereafter and at about 6:30 A. M. on July 7, police officer James Rose entered appellant's said apartment. The television set was by the front door, there was broken glass on the floor, a davenport was unfolded with a stain in the center thereof, and beside the davenport was a pair of child's panties wadded up. On the doorjamb leading into the bedroom from the living room there was a stain, possibly of blood. On the back porch there was a long smear of what appeared to be blood by the light switch. The condition of this apartment as so testified by officer Rose is materially different from what officers Sleeper, McCauley, and Heenan testified they saw when entering the said apartment at approximately 8:40 P. M. the evening before. None of these last three officers testified as to any stain on the davenport, as to seeing a pair of child's panties beside the davenport, or as to the position of the television set by the front door. Officer McCauley testified that the davenport was in an upright position and that he saw nothing unusual as concerned it at all; that when he returned the next morning the panties were lying by the couch and had not been there before, and there was only one light burning while all of the lights were on in the house the night before. He also noticed that the couch was not in an upright position as it was the night before. Officer Heenan's testimony similarly related a change in the condition of the apartment from the evening of July 6 to the morning of July 7. The body of the victim was found the morning of July 7 and at approximately noon of that day a postmortem examination of the body was made by Dr. Modglin. He testified that the child died as a result of a wound made by a fairly dull knife inflicted to the anterior and internal jugular vein, that death would have resulted within an hour after the wound had been inflicted, that the child had been dead not less than six hours nor more than thirty hours, that his best estimate as to the time of death was about 14 or 15 hours prior to such examination, and that the wound was not self-inflicted.

With such testimony in the record appellant contends that it would have been impossible for him to have committed the crime, because 14 or 15 hours prior to the post-mortem examination would have been approximately 9:00 P. M. on July 6, 1959 and at that time he would have been on the train.

Other evidence in the record discloses that when officer Rose found the child's body in the attic he observed a blanket or bedspread and a doll by the side thereof. A knife was found in the attic and there was evidence that a set of similar knives had been in the possession of appellant and his wife prior to their separation a few days before. When appellant returned to Las Vegas on July 8 and while he was enroute to the Las Vegas police station after departing from the train, in answer to the question asked by one McColl, a newspaper editor, "Did you kill the girl?" he answered "Yes," and stated he had killed her because he thought she was his wife and she had left him and the first time he realized that the girl was not his wife was when he was in California.

Officer Handlon of the Las Vegas Police Department testified that appellant after his return from Los Angeles stated to him that he killed the girl with a knife, then took her to the attic, then left the house returning thereto some time thereafter on the same day, and then he departed for Los Angeles.

A conversation between appellant and Dr. Shannon, a psychiatrist who was examining him on behalf of the state, had been tape recorded and the tape recording was produced and heard by the court. This conversation revealed that when the victim came into the apartment, and asked for appellant's wife, appellant grabbed her when she attempted to leave. He took off her panties, picked her up and put her in the attic while the little girl's mother was calling her from outside. There he cut her or hit her with the knife, put the spread over her head, and threw her doll into the attic.

There was other and additional evidence in the lengthy transcript. While much of it is conflicting and, disregarding his admissions, could warrant a finding that appellant was not in Las Vegas at the time the crime was committed, still there is sufficient evidence to connect him with the crime. The evidence shows that a knife wound resulted in the death of the victim and was inflicted through the agency of another. As applied to homicide cases these two elements, to wit, the fact of death and the criminal agency of another causing the death, constitute the corpus delicti of the crime. They were proven aliunde any confession or admission of appellant. The identity of the perpetrator of the homicide is not an element of the corpus delicti. Sefton v. State, 72 Nev. 106, 295 P.2d 385; State v. Fouquette, 67 Nev. 505, 221 P.2d 404.

The evidence to connect appellant with the commission of the crime other than his admissions consisted in part of the following: the criminal act took place in appellant's locked apartment from where he was seen walking soon after the disappearance of the victim; he had been the sole occupant of the apartment on the day of the homicide; the finding of the child's doll beside her body and the body covered by the blanket all as related by the appellant in his admission. See Sefton v. State, supra.

Other facts and circumstances appearing from the record in addition to the evidence aforesaid would tend to identify appellant as the perpetrator of the crime, but further detailing the evidence is not required because what has already been set out would in itself be adequate to justify the conclusion of the justice of the peace that there was sufficient cause to believe appellant guilty as charged.

In this appeal it is not our duty to pass upon the sufficiency of the evidence to warrant the conviction of

the appellant. All that is required is that there be sufficient legal evidence to make it appear that a public offense has been committed and that there is sufficient cause to believe the appellant guilty thereof. Raggio v. Bryan, 76 Nev. 1, 348 P.2d 156.

Affirmed.

BADT and PIKE, JJ., concur.