RICHARD GARFIELD DUNN, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 7445

October 23, 1975          541 P.2d 524

*Fadgen & Johnson,* Las Vegas, for Appellant.

*Robert List,* Attorney General, Carson City; *George E. Holt,*
District Attorney, and *Sherman Simmons,* Deputy District
Attorney, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

An information was filed against the appellant, Richard Garfield Dunn, charging him in Count I with the murder of Bernard Hayes, in Count II with the attempted murder of Ozie Conerly, Jr., and in Count III with the attempted murder of Allan Patton.

Dunn pled guilty to the murder of Hayes, whereupon the State dismissed the remaining counts. The court sentenced him to life imprisonment with possibility of parole, on Count I.

Thereafter, Dunn filed *in forma pauperis* a petition for post-conviction relief, claiming that his guilty plea to the murder charge was not made freely and voluntarily. Upon the State's stipulation, Dunn's guilty plea was ordered withdrawn. The two attempted murder counts were reinstated. Dunn pled not guilty to all three counts, and he went to trial before a jury. The jury found him guilty of Count I, the murder of Hayes, and guilty of assault with a deadly weapon as to Counts II and III, a lesser included crime of the charge of attempted murder. Dunn has appealed from his judgment of conviction of all three counts, on several grounds, which we reject as meritless.

1. This case arose out of a shooting in a bar in Las Vegas. Dunn shot Hayes 11 times, killing him. He also shot the bartender, Allan Patton, and a patron of the bar, Ozie Conerly, Jr. The State contended that Dunn went into the bar with premeditation to kill Hayes because Hayes had been dating Dunn's girl friend, Carol. The State produced witnesses who testified

that two nights before the shooting Hayes was with Carol and another couple in a bar when Dunn approached Hayes and an argument ensued between the two. Dunn claimed that, on the day of the shooting, he entered the bar where the shootings occurred and ordered a beer; that the bartender (Patton) became belligerent and ordered him out of the bar; that he (Dunn) thought Patton was going to get a gun; so Dunn shot him twice before he could do so; that a patron (Conerly) grabbed Dunn; so Dunn then shot him twice. Next, Hayes accosted Dunn, and they fell to the floor. In the scuffle, Hayes, according to Dunn, bit him on the chin. This irritated Dunn, who jumped up and shot Hayes several times, killing him.

Dunn testified that he did know Carol, but that he had not seen her for many years, not since their junior high school days. Dunn, in his defense, called Carol, who testified that she knew Dunn but that she had not seen him in 10 years. In rebuttal, the State called two witnesses, Ruth Seaton and Denise Birdcileuskas, who were barmaids at the bar where Dunn had accosted Hayes two nights prior to the fatal shooting. They both knew Carol, who also worked in the bar, as a cocktail waitress. They testified that they had seen Dunn and Carol together in the bar on several occasions[1] and that Hayes had

---

[1]BY DISTRICT ATTORNEY WOOFTER TO WITNESS SEATON:

"Q. Now, directing your attention back to your employment at Al's Liquors. Did you have an occasion at any time to see the Defendant, Richard Dunn, in the company of the girl you identified as Carol, in Al's Liquors?

"A. Yes, I did.

"Q. And would you state, as best you can recollect, the times that you did see Richard Dunn and Carol together in Al's Liquors.

"A. Well, I can only recall approximately three times that they were actually together. Once, they were sitting at the bar having a drink and talking. Once, she walked into the club and said she didn't want to have anything to do with him; that she was upset and she said she just didn't want to be bothered by him at all, and I told her that she did not have to worry about it; that if he gave her any trouble, we would ask him to leave.

"The last time that I saw the two together, they were having words . . .

" . . .

"Q. Did you hear any conversation that was going on between Mr. Dunn and Carol at that time?

"A. At the time, the gentleman yelled at her, 'You are always messing around with other guys and I am going to get you for this.'

"Q. What happened after you heard the Defendant say this to Carol?

"A. We had a slight problem in the back room and I just walked away and I saw Carol run into the bathroom. She seemed to be crying."

been with Carol in the bar two nights before his death.[2] However, neither witness could make an in-court identification of Dunn until she was shown a mug shot of him that was received in evidence as Exhibit G.

2. Dunn contends that the trial court committed reversible error by admitting the testimony of Ruth Seaton and Denise Birdcileuskas. Both witnesses were originally unable to identify Dunn in court, although Seaton recognized him during her testimony, stating that "he had changed." Both witnesses were, however, able to identify Dunn from a photograph previously received in evidence as Exhibit G. Defense counsel, in support of a motion to strike the two witnesses' testimony, called to the stand Investigator Ed Armstrong, an employee of the district attorney's office. Armstrong stated that he had shown the photograph of Dunn, Exhibit G, to the two witnesess prior to their testimony, but had covered the name at the bottom so that it would not be visible.[3] Dunn contends that his constitutional rights were abrogated by this procedure, under cases decided by this court and the United States Supreme Court: United States v. Wade, 388 U.S. 218 (1967); Gilbert v. California, 388 U.S. 263 (1967); Simmons v. United States, 390 U.S. 377 (1968); Hampton v. State, 85 Nev. 720, 462 P.2d 760 (1969); Thompson v. State, 85 Nev. 134, 451 P.2d 704 (1969).

In each of the above cases, the factual situation was different from that of the instant case. There, victims or other eyewitnesses took the stand to identify various defendants as perpetrators of crime. Here, Seaton and Birdcileuskas were not testifying as to any crime committed by Dunn. They were called by the State to refute Dunn's flat denial that he had seen

---

[2] BY DISTRICT ATTORNEY WOOFTER TO WITNESS SEATON:

"Q. Did you have any occasion to see the girl that you have already identified in Defendant's Exhibit 'F', Carol, with the deceased, Ben Hayes, in Al's Liquor Store?

"A. Yes, sir.

"Q. And when was this?

"A. She was with him about two nights prior to his death. She was sitting with him in the back room. On a number of other occasions, she had sat with the man, talking to him and I had to ask her to get up because it was against house rules for employees to sit in the back room with customers."

[3] The two witnesess also identified the victim, Hayes, from a photograph, Exhibit 9, and Carol from Exhibit F, both previously received in evidence.

Carol. They testified that Dunn had been a patron of a bar in which they had worked and that they had seen him there with Carol on several occasions prior to the killing. Cf. Harris v. New York, 401 U.S. 222 (1971). Under the factual posture of the case, it was permissible for the State to present the testimony.

Additionally, James Clury, a security guard at the bar where Seaton and Birdcileuskas worked, testified to substantially the same facts as they did. Clury was able to positively identify Dunn in court. Dunn was unable to develop evidence of misidentification occasioned by the showing of Exhibit G to the two witnesses prior to their testimony. Both witnesses were available for cross-examination. The district attorney's investigator was called as a witness and questioned. The photograph itself was in evidence. No hint of improper or suggestive use of the photograph was shown.

3. State's witness Joseph Michael Yurko testified that a man in jail with him in 1970, known as "Rick or Posey", told him that he had killed a man named Hayes in a bar because Hayes had been going out with his girl friend. Yurko was unable to identify Dunn in court. Custodians of jail records testified that Dunn and witness Yurko had been incarcerated in the same cell.

Defense counsel produced evidence that a man named "Posey" was also in the cell with Yurko and Dunn. He argued that Yurko was confused about who had told him what, since "Rick" and "Posey" were clearly two different people, and not the same individual, as Yurko had testified. Dunn urges that, for this reason, and for the further reason that Yurko could not identify Dunn in court, Yurko should not have been permitted to testify.

Yurko did not make identification by means of a photograph, Exhibit G, as did the two other witnesess. His testimony was connected to Dunn by jail records, confirming that they were in the same cell together, and by the specificity of detail contained in Dunn's statements to him concerning the commission of the crime: names, places, dates, number of people, portions of anatomy into which shots were fired. That there may have been some confusion as to names or nicknames of fellow cellmates some 3 years following the incarceration goes to the weight to be accorded the testimony. Inability of Yurko himself to postively identify Dunn in court likewise merely goes to the weight of the testimony.

4. Dunn contends that the court violated his constitutional rights of due process by instructing the jury that it could return a verdict of life without possibility of parole. In this regard, whatever the merits of Dunn's contention might have been if the jury had returned such a verdict, the fact is that the jury returned a sentence precisely the same as the original sentence. Thus, no prejudice resulted, and Dunn has no ground for complaint.

5. Dunn argues that he was not permitted to offer evidence of good character in his own behalf because the court would not allow him to testify as to his military record. At a hearing outside the jury's presence, the prosecutor stated that he would oppose defense counsel's efforts to go into Dunn's service record, on the ground of immateriality. Defense counsel stated that his reason for wishing to go into Dunn's military record was to show that Dunn served "two terms in Viet Nam" and to show that "he became acquainted with guns and during his time in the service this became his hobby." Counsel never made an offer of proof. The prosecutor suggested that such an offer be made. During the discussion outside the jury's presence, the court was never asked to rule on any proposed testimony. And when the jury entered, no question was asked of Dunn concerning his military record to which there was an objection raised. It cannot be shown by the record before us what evidence Dunn sought to offer, because there was never a proper offer of proof, a direct ruling by the court, or any steps taken by Dunn to perfect his record in that respect. Thus appellate consideration is precluded, under Clark v. State, 89 Nev. 392, 513 P.2d 1224 (1973); Cook v. State, 77 Nev. 83, 359 P.2d 483 (1961); Kelley v. State, 76 Nev. 65, 348 P.2d 966 (1960); and State v. Fouquette, 67 Nev. 505, 221 P.2d 404 (1950).

Dunn's judgment of conviction on all three counts is affirmed.

GUNDERSON, C. J., and BATJER, ZENOFF, and THOMPSON, JJ., concur.